1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

ANNETTE BAKAY and RICHARD
BAKAY, wife and husband,

10

Plaintiffs,                          Case No.  C04-5803RJB

11

v.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LAURIE A. YARNES, in her individual and
official capacity as CLALLAM COUNTY
ANIMAL CONTROL OFFICER; LAURIE
A. YARNES and TODD A. YARNES, a
marital community; TRACEY KELLAS, in
her individual and official capacity as
CLALLAM COUNTY ANIMAL
CONTROL OFFICER, and RANDOLPH J.
KELLAS, husband and wife, a marital
community; CLALLAM COUNTY ex rel.
CLALLAM COUNTY SHERIFF'S OFFICE
and CLALLAM COUNTY ANIMAL
CONTROL, a Washington municipal
corporation; CHARLES B. SCHRAMM, in
his individual and official capacity as
PRESIDENT OF HUMANE SOCIETY OF
CLALLAM COUNTY (UBI 601-141-356),
a Washington nonprofit corporation;
CHARLES B. SCHRAMM and JANE DOE
SCHRAMM, a marital community;
HUMANE SOCIETY OF CLALLAM
COUNTY (UBI 601-141-356), a
Washington nonprofit corporation; TEV
BARROS, D.V.M. (vt6853), individually:
TEV M. BARROS and JANE DOE
BARROS, a marital community; and DOES
1-10,

ORDER REGARDING: 1) MOTION
FOR PARTIAL JUDGMENT ON
THE PLEADINGS TO DISMISS
EMOTIONAL DISTRESS, LOSS
OF CONSORTIUM AND LOST
PROFITS CLAIMS; 2)
PLAINTIFFS' MOTION FOR
CERTIFICATION TO THE
WASHINGTON STATE SUPREME
COURT; 3) PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT 4)
DEFENDANTS' MOTION FOR
CONTINUANCE 5)
DEFENDANTS' MOTION TO
STRIKE

26

Defendants.

ORDER - 1

This matter comes before the Court on Defendants' Motion for Partial Judgment on the Pleadings to Dismiss Emotional Distress, Loss of Consortium, and Lost Profits Claims (Dkt. 29), Plaintiffs' Motion for Certification of Questions to the State Supreme Court (Dkt. 59), Plaintiffs' Motion for Summary Judgment on Defendants' Public Duty Doctrine Affirmative Defense (Dkt. 49), Defendants' Motion to Continue Plaintiffs' Motion for Summary Judgment (Dkt. 55) and Defendants' Motion to Strike the "oral interview" of Tev Barros (Dkt. 55). The Court has reviewed all documents filed in support of and in opposition to these motions, has reviewed the entire file, and is fully advised.

## I.   BASIC and PROCEDURAL FACTS

For the purposes of the Motion for Judgment on the Pleadings (Dkt. 29), all facts will be taken from the Second Amended Complaint ("Complaint"). Dkt. 46. Additional facts, necessary for the Motion for Summary Judgment (Dkt. 49), will be specifically identified.

Plaintiffs' Complaint indicates this matter arose after Defendants wrongfully searched their cattery, seized their cats and destroyed around 40 of approximately 68 cats. *Id.* In late November 2001, Clallam County received a barking complaint from Plaintiffs' neighbor, prompting Animal Control Officer Yarnes to go to the Plaintiffs' property. *Id.* at 4. Plaintiffs were out of town. *Id.* Yarnes talked with a substitute caretaker and the substitute caretaker's mother, the latter of whom "expressed concern for some of the cats housed inside the property." *Id.* Yarnes returned the following day and made a video tape. *Id* at 5. After obtaining a search warrant, which Plaintiffs contend was illegal, members of the Clallam County Sheriff's office returned to Plaintiffs' property on December 10, 2001 and seized approximately 68 cats. *Id.* Plaintiffs were home at the time of the seizure. *Id.*

For the purpose of the Summary Judgment Motion, the following is relevant and supported by additional evidence: while the Clallam County Sheriff's office was at the Plaintiffs residence seizing the cats, Richard Bakay contends he asked Yarnes and another animal control officer, Kellas, if they intended to euthanize certain cats. Dkt. 50, at 2. He states they assured

him no harm would come to the cats as long as he complied with the notice they gave him, which indicated he had 15 days to petition in court for the cats' return.  *Id.*  Yarnes and Kellas deny giving Richard Bakay any such assurances.  Dkts. 57 and 58.  The remaining facts are taken from the Complaint.

The Complaint indicates Tev M. Barros, D.V.M., examined the cats and ordered the euthanasia of at least 42 cats.  Dkt. 46, at 4.  Plaintiffs' Complaint alleges that even though Dr. Barros was video taped examining the cats and making the decision as whether to euthanize the animal or not, Yarnes and Kellas were hidden off camera making signals to Dr. Barros as to which animals should be killed.  *Id.* at 7.  That evening and the next morning, Defendants killed the cats.  *Id.* at 6.  Later, Kellas served a search warrant on Plaintiffs' veterinarian, Dr. Linda Allen, and seized two cats, one of which was euthanized.  *Id.*

In late December 2001, the Clallam County Prosecuting Attorneys's Office filed eighty-four counts of animal cruelty charges against Annette Bakay.  *Id.* at 6.  Clallam County then lost the bodies of the euthanized cats.  *Id.*  All counts against Annette Bakay were dropped on November 12, 2002 pursuant to an Agreed Motion to Continue for Dismissal signed August 27, 2002.  *Id.*

The remaining 27 cats were returned to Plaintiffs, and Defendants have not had any of Plaintiffs' cats in their possession since 2002.  *Id.*  According to the Complaint, Plaintiffs spayed and neutered more than one half the remaining cats for various reasons.  *Id.*  Plaintiffs also lost their Cat Fanciers' Association license.  *Id.*

As a result of the seizure and destruction of the cats, Plaintiffs have alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as a basis for claims under 42 U.S.C. § 1983, and several state law claims.  Dkt. 46.  Plaintiffs have claimed emotional distress and lost profit damages.  *Id.*

### A.    MOTION FOR JUDGMENT ON THE PLEADINGS

In the Motion for Judgment on the Pleadings, Defendants Laurie Yarnes, Tracey Kellas, and Clallam County ("Clallam County") move for dismissal of Plaintiffs' claims for emotional

distress, loss of consortium, and lost profits.  Dkt. 48.   Clallam County argues 1) Washington law, including *Pickford v. Maison*, 124 Wash. App. 257 (2004), does not allow a pet owner to recover the sentimental value of a pet, and 2) as a matter of law, Plaintiffs can not recover lost profits for the remaining cats' inability to produce more cats.  *Id.*

Plaintiffs oppose the Motion in their Response.  Dkt. 59.  Plaintiffs urge they are entitled to emotional distress damages arguing 1) *Pickford v. Maison*, 124 Wash. App. 257 (2004) should be disregarded, 2) Washington law recognizes emotional distress damages for claims of trespass to chattels and nuisance, 3) aside from *Pickford*, no other Washington case has applied the tort of outrage to an animal, and other states have recognized intentional infliction of emotional distress damages in cases regarding animals, 4) *Pickford*'s holding that a pet owner could not recover for negligent infliction of emotional distress is distinguishable and other states have permitted recovery for negligent infliction of emotional distress in pet cases, 5) protection afforded the improper handling of human corpses and the emotional distress damages allowed should be extended to nonhuman corpses, 6) Washington allows emotional distress damages for some breaches of contract, and 7) emotional distress damages are available in § 1983 suits.  *Id.* at 4-17.  Plaintiffs argue that a loss of companionship claim, which now applies to humans, should be extended to nonhuman companions.  *Id.*, at 20-24.  Plaintiffs also argue that this Court should allow the evidence of lost profits before the jury as a basis for awarding loss of use between the time of extermination and time when the cats could have been reasonably replaced. *Id.* at 17-20.  Plaintiffs additionally argue that "where appropriate" this Court should certify "the novel, unsettled questions concerning emotional distress damages and the reckless and intentional death of nonhuman animals" to the Washington State Supreme Court.  *Id.* at 24.

## B.   MOTION FOR SUMMARY JUDGMENT

In the Motion for Summary Judgment, Plaintiffs move for the dismissal of Defendants public duty doctrine defense.  Dkt. 49.  Plaintiffs argue two of the four exceptions to the public duty doctrine apply to them: 1) the legislature intended for Clallam County to owe Plaintiffs a

1  duty and 2) Clallam County owes a duty to Plaintiffs as a result of a special relationship that

2  sprung from Clallam County's dealings with Plaintiffs on the day the cats were taken. *Id.*

3       Defendants deny that the legislature intended to create a duty for Plaintiffs and argue that

4  there are issues of fact regarding whether a special relationship was created between the County

5  and Plaintiffs. Dkt. 55. Defendants move for a continuance of Plaintiffs' motion for summary

6  judgment, indicating more time for discovery is needed. *Id.* Defendants further move to strike

7  the oral interview of Dr. Tev Barros. *Id.*

8  **II.    DISCUSSION**

9       **A.    JUDGMENT ON THE PLEADINGS**

10           1.    STANDARD

11       A court may dismiss a claim if it appears beyond doubt that the plaintiff can prove no set

12  of facts to support the claim that would entitle the plaintiff to relief. *Keniston v. Roberts*, 717

13  F.2d 1295, 1300 (9th Cir. 1983), *citing Conley v. Gibson*, 355 U.S. 41, 45-56 (1957).

14  Dismissal may be based on either the lack of a cognizable legal theory or the absence of

15  sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police

16  Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and

17  the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir.

18  1983). However, a plaintiff must plead factual allegations with specificity; vague and conclusory

19  allegations of fact fail to state a claim for relief. *Colburn v. Upper Darby Township*, 838 F.2d

20  663, 666 (3rd Cir. 1988). If a claim is based on a proper legal theory but fails to allege sufficient

21  facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal.

22  *Keniston v. Roberts*, 717 F.2d at 1300. If the claim is not based on a proper legal theory, the

23  claim should be dismissed. *Id.* The standard applied in a Rule 12(c) motion is virtually identical

24  to that applied under Rule 12(b)(6). *See Morgan v. Peralta Community College Dist.*, 825 F.

25  Supp. 893 (N.D. Cal. 1993).

           2.    EMOTIONAL DISTRESS DAMAGES

26       Clallam County argues that Washington law, specifically *Pickford v. Maison*, 124 Wash.

App. 257 (2004), does not allow a pet owner to recover emotional distress damages for the death or injury of a pet.

A federal court applying state law must apply the law as it believes the state supreme court would apply it. *Gravquick v. Trimble Navigation International Limited,* 323 F.3d 1219, 1222 (9th Cir. 2003). In the absence of a controlling state supreme court decision, the court must predict how the state supreme court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids. *Id.* (*Citing Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1045-46 (9th Cir. 2001)). Insofar as Plaintiffs are making a motion to certify questions of law to the Washington Supreme Court, the motion should be denied. Plaintiffs do not provide an adequate basis to do so in light of *Gravquick.*

Neither party cites to, nor is this Court aware of, a Washington State Supreme Court ruling on whether a pet owner could recover for the negligent or intentional infliction of emotional distress resulting from the death of the pet. In *Pickford*, Division Two of the Washington Court of Appeals held that a dog owner whose dog was injured by defendants' dogs could not recover for negligent or malicious infliction of emotional distress. 124 Wash. App. at 260-61. There, a small dog was attacked by neighboring Rottweilers, who had escaped from a fenced yard. *Id.* at 258-59. The *Pickford* Court found that defendants had not inflicted severe emotional distress on plaintiff, but were negligent for failing to keep their dogs contained. *Id.* at 261. The *Pickford* plaintiff also argued that she should be entitled to damages for harm to the human-companion animal relationship and that fair market value compensation was insufficient. *Id.* The *Pickford* Court declined to allow plaintiff to recover for "loss of companionship for death or injury to a pet." *Id.* at 263. The holding in *Pickford* is applicable here.

a.    *Negligent Infliction of Emotional Distress*

Plaintiffs in the instant case, like the plaintiff in *Pickford* are not entitled to negligent infliction of emotional distress damages. The *Pickford* Court held that Washington pet owners are not entitled to recovery for the negligent infliction of emotional distress. *Id.* at 260-61. Plaintiffs offer no contrary Washington authority. As the *Pickford* Court noted, "[i]n

1   Washington, damages are recoverable for the actual or intrinsic value of lost property but not for

2   sentimental value." *Id.*

3                          b.      *Intentional Infliction of Emotional Distress*

4        *Pickford* does not however, directly rule on whether Washington pet owners could

5   recover under a theory of intentional infliction of emotional distress.  The *Pickford* court finds

6   that the defendants did not intentionally inflict severe emotional distress upon the plaintiff and

7   distinguishes cases from other states where the claim was found to have existed.  *Id.* at 261.

8   The two cases cited, *LaPorte v. Assoc. Independents*, 163 So.2d 267 (Fla. 1964) and

9   *Richardson v. Fairbanks North Star Borough,* 705 P.2d 454 (Alaska 1985) both allowed a

10  cause of action for the intentional infliction of emotional distress for the intentional killing of an

11  animal.  The Alaska Supreme Court also allowed the claim for the reckless killing of an animal.

12  *Richardson* at 456.  Neither party cites to authority from any state, nor is this Court aware of

13  any, where a court failed to recognize a claim for intentional infliction of emotional distress

14  where there was evidence of the malicious killing of a pet.  Even though Washington Courts

15  have not directly ruled on the issue, *LaPorte* and *Richardson* provide a persuasive basis upon

16  which to find this claim for the malicious killing of a pet would not be foreclosed under

17  Washington law.  At this stage of the case, Clallam County's motion to dismiss Plaintiffs' claim

18  for intentional infliction of emotional distress should be denied.

19                          c.      *Conversion, Nuisance, Wrongful Invasion of Right to a Corpse,*
                                    *Breach of Contract, and 42 U.S.C. § 1983 Claims*

20       Plaintiffs argue further that they are permitted under law to recover emotional distress

21  damages on their conversion/trespass to chattels, nuisance, wrongful invasion of right to custody

22  of a corpse, breach of contract, and 42 U.S.C. § 1983 claims.  Clallam County does not move

23  for dismissal of any of these claims, but moves for "an order dismissing Plaintiffs' claims for any

24  alleged emotional or consortium/companionship damages suffered as a result of euthanasia of

25  [Plaintiffs'] cats." Dkt. 48, at 2.  Clallam County makes several persuasive arguments in its

26  Reply regarding the viability of some of these claims.  However, there is no motion for dismissal

1    of any of these claims properly before the Court.  The opinion will now address whether

2    emotional distress damages are available generally for each of the above claims.

3         Plaintiff cites the general rule in Washington that emotional distress damages are

4    "available upon proof of 'an intentional tort.'"  Dkt. 59 at 4 (*Citing Birchler v. Castello Land*

5    *Co., Inc.*, 133 Wn2. 106, 116 (1997)).  Plaintiff then states that conversion and trespass to

6    chattels are intentional torts.  *Id.*  Plaintiff offers no further explanation.  Although no authority

7    was cited by either side regarding the proper measure of damages for the tort of

8    conversion/trespass to chattel, the Washington Supreme Court has stated,

> The standard of recovery for destruction of personal property was summarized in *McCurdy v. Union Pac. R.R.*, 68 Wash.2d 457, 413 P.2d 617 (1966). We recognized in *McCurdy* that (1) personal property which is destroyed may have a market value, in which case that market value is the measure of damages; (2) if destroyed property has no market value but can be replaced or reproduced, then the measure is the cost of replacement or reproduction; (3) if the destroyed property has no market value and cannot be replaced or reproduced, then the value to the owner is to be the proper measure of damages. However, while not stated in *McCurdy*, we have held that in the third *McCurdy* situation, damages are not recoverable for the sentimental value which the owner places on the property.

*Mieske v. Bartell Drug Co.*, 92 Wash.2d 40, (1979); *Herberg v. Swartz*, 89 Wash.2d 916, 578 P.2d 17 (1978).

     Here, as in *Pickford*, the proper measure of damages is the fair market value of the lost cats.  The Complaint indicates the cats were used in the Plaintiffs' cat breeding business.  Dkt. 46, at 7-8.  Like the plaintiff in *Pickford*, Plaintiffs here urge that their cats are worth more than pieces of property.  Plaintiffs fail to contend that a fair market value could not be obtained for the cats.  In light of the Washington Supreme Court's classification of property (whether a market value could be obtained or not) and damages due for the destruction of that property under *Mieske*, the best measure of damages for Plaintiffs' conversion/trespass to chattel claim is the fair market value of the cats.  In the absence of a showing that the cats had no market value, Defendant's Motion regarding emotional distress damages for Plaintiffs' claim of conversion/trespass to chattel should be granted.

     Emotional distress damages are recognized in Washington in certain circumstances for

ORDER - 8

claims of nuisance, *Miotke v. Spokane,* 101 Wn.2d 307, 332 (1984), wrongful invasion of right

to custody of a corpse, *Gadbury v. Bleitz,* 133 Wash. 134, 139 (1925), breach of contract,

*Gagliardi v. Denny's Restruants, Inc.,* 117 Wn.2d 426,446-447 (1991), and 42 U.S.C. § 1983,

*Carey v. Piphus,* 435 U.S. 247, 263-64 (1978).  A meaningful analysis of the proper damages

due under each claim requires an analysis of the merits of the underlying claim.  Again, no

motion regarding the claims themselves are properly before the Court.  The Court expresses no

opinion on the validity of these claims.  Clallam County's motion to dismiss emotional distress

damages on these claims should be denied without prejudice.

### 3.    LOSS OF COMPANIONSHIP

Under Washington law, a plaintiff cannot recover for "loss of companionship for death

or injury to a pet." *Pickford* at 263.  Although Plaintiffs here argue that the "common law is

independently primed to allow loss of companionship for the death of nonhuman companions,"

Washington law has not extended the claim that far.  The *Pickford* court wisely noted that such

an extension is more appropriately made by the legislature.  *Id.*  Clallam County's motion to

dismiss Plaintiffs' claims for loss of companionship/consortium should be granted.

### 4.    LOST PROFITS

"The measure of damages for the loss or destruction of personal property is ordinarily its

market value, if it has a market value.  This measure of damages applies in the case of loss or

destruction of animals." *Covery v. Western Tank Lines,* Inc. 36 Wash.2d 381, 386 (1950).

The particular qualities and capabilities of the animal may be taken into consideration in

determining its market value.  *Id.* (*Citing Taylor v. Spokane Falls & Northern R. Co.*, 32 Wash.

450 (1903)).  In *Covery* the plaintiff attempted to recover for the loss of rare male mink used for

breeding.  *Id.*  The Washington Supreme Court rejected the plaintiff's effort to recover both for

the value the mink would acquire if sold as breeders and for the value of any offspring they

might have sired.  *Id.*  The Court held the proper measure of damages under the facts of that

case was the fair market value of the mink and that to permit recovery of the value of offspring

would allow double recovery.  *Id.* at 389.

ORDER - 9

1    Clallam County moves to "dismiss any claims for lost profits," and argues as a "matter of

2    law, Plaintiffs cannot recover for the returned felines' inability to reproduce more inventory,"

3    citing *Covery*.  Dkt. 48, at 2 and 7.  Clallam County's motion should be granted in so far as

4    Plaintiffs are attempting to recover both the market value of the destroyed and spayed/neutered

5    cats and the value of any offspring that they may have produced.  *Covery* stands for the

6    proposition that allowing the Plaintiffs to claim both forms of recovery would result in double

7    damages.

8    **B.    STANDARD FOR SUMMARY JUDGMENT**

9        1.    <u>STANDARD</u>

10   Summary judgment is proper only if the pleadings, depositions, answers to

11   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

12   genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

13   law.  Fed.R.Civ.P. 56 (c). The moving party is entitled to judgment as a matter of law when the

14   nonmoving party fails to make a sufficient showing on an essential element of a claim in the case

15   on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

16   323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could

17   not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v.*

18   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific,

19   significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed.R.Civ.P.

20   56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

21   supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

22   of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc.*

23   *v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

24   The determination of the existence of a material fact is often a close question.  The court

25   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

26   e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W.*

*Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in

ORDER - 10

favor of the nonmoving party only when the facts specifically attested by that party contradict

facts specifically attested by the moving party.  The nonmoving party may not merely state that

it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed

at trial to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson,*

*supra)*.  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts"

will not be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

2.   <u>PUBLIC DUTY DOCTRINE</u>

"Under the public duty doctrine, no liability may be imposed for a public official's

negligent conduct unless it is shown that the duty breached was owed to the injured person as an

individual and was not merely the breach of an obligation owed to the public in general (*i.e.,* a

duty to all is a duty to no one)."  *Taylor v. Stevens County*, 111 Wash.2d 159, 163

(1988)(internal citations omitted).  Defendants raise the public duty doctrine as an affirmative

defense in their answer.  Dkt. 25, at 29.  Plaintiffs move to summarily dismiss this affirmative

defense.  Dkt. 55.

a.   *RCW 16.52.210*

Plaintiffs' Motion for Summary Judgment should be granted, in so far as Defendants

raise the public duty doctrine defense to their actions under RCW 16.52, based on the plain

language of RCW 16.52.210.  RCW 16.52.210 provides:

> This chapter shall not limit the right of a law enforcement officer to destroy an
> animal that has been seriously injured and would otherwise continue to suffer.
> Such action shall be undertaken with reasonable prudence and, whenever
> possible, in consultation with a licensed veterinarian and the owner of the animal.

> Law enforcement officers and licensed veterinarians shall be immune from civil
> and criminal liability for actions taken under this chapter if reasonable prudence is
> exercised in carrying out the provisions of this chapter.

The plain language of this section indicates the legislature's intent to require law enforcement

officers and licensed veterinarians to exercise reasonable prudence in carrying out the statute.  In

essence, they are required to not be negligent.  This statute eliminates the public duty doctrine

defense for Defendants regarding their actions pursuant to RCW 16.52.  Absent this statute,

under the public duty doctrine defense, Defendants could not be held liable for negligent conduct

in the execution of their duties unless certain exceptions apply.  Plaintiffs' Motion for Summary

Judgment should be granted and Defendants' public duty doctrine affirmative defense should be

dismissed in so far as it is raised with respect to their actions under RCW 16.52.

Plaintiffs move for summary dismissal of Defendants' public duty doctrine defense on

other grounds as well.  Dkt. 49.  Plaintiffs allege two of the four exceptions to the public duty

doctrine also apply to them: 1) legislative intent created a duty owed from Clallam County to

Plaintiffs and 2) a special relationship created a duty owed from Clallam County to Plaintiffs.  *Id.*

Defendants, in addition to arguing in opposition to the motion, also move for a continuance to

gain more time for discovery.  Dkt. 55.  Given the record before the Court, this motion for

continuance should be denied.

b.   *Legislative Intent*

"The public duty rule of nonliability does not apply where the Legislature enacts

legislation for the protection of persons of the plaintiff's class.  In *Halvorson v. Dahl*, 89

Wash.2d 673, 676, 574 P.2d 1190 (1978) we stated that "[l]iability can be founded upon a

municipal code if that code by its terms evidences a clear intent to identify and protect a

particular and circumscribed class of persons."  *Taylor* at 163.

The legislative purpose of RCW 16.52, the Washington code's chapter on animal

cruelty, is at issue here.  The title of this chapter of the Washington Code is the "Prevention of

Cruelty to Animals."  The express legislative intent is as follows: "[t]he legislature finds there is

a need to modernize the law on animal cruelty to more appropriately address the nature of the

offense. . . ."  The various chapters include:  what agencies may enforce provisions of the

chapter, RCW 16.52.015-020; the circumstances under which an animal may be removed for

feeding, examination, and euthanasia and the notice that is required to do the same, RCW

16.52.085; types of animal cruelty, e.g. RCW 16.52.095-130; definition of animal cruelty in the

first and second degrees, RCW 16.52.205-207; and immunity from liability for law enforcement

and licensed veterinarians for actions taken under the chapter, RCW 16.52.210.  The overriding

purpose of the legislation is to prevent animal cruelty by setting forth definitions of the crime,

setting up procedures related to the prosecution of the crime and the disposition of any animals

involved.

Plaintiffs contend that the legislation is intended to protect their property interests in

their cats. Dkt 49.  Plaintiffs point to the notice requirement and the portion of the statute

which states that "the agency having custody of the animal may euthanize the animal or may find

a responsible person to adopt the animal not less than fifteen business days after the animal is

taken into custody" (RCW 16.52.085) to support their position.  Dkt. 49, at 9-13.  However,

the next line of the statute allows the custodial agency to "euthanize severely injured, diseased,

or suffering animals at any time."  RCW 16.52.085.  By making this provision, the legislature

was clearly intending to subjugate the property interest of the animal owner to the welfare of the

animals.  Moreover, this addition effectively undermines Plaintiffs' position that the terms of

RCW 16.52 indicate a legislative intent to protect their property interests in their cats above all

else.  The legislature clearly intended to qualify any protection given to animal owners.  Plaintiffs

also contend that Defendants owed them a duty not to lose the cats after they were killed.  Dkt.

49, at 14.  Plaintiffs cite to various laws dealing with the state's duty regarding evidence in

criminal trials.  *Id.*  Plaintiffs fail to identify any specific statute which indicates a "clear intent to

identify and protect" them applicable in this civil matter.  Plaintiffs fail to establish this exception

to the public duty doctrine applies.  Plaintiffs' Motion for Summary Judgment on Defendants'

public duty doctrine defense should be denied insofar as it is based on the legislative intent

1    exception.

2                       c.      *Special Relationship*

3          The first hurdle in any negligence action is establishing a duty. Under the public
           duty doctrine, recovery from a municipal corporation is possible only when the
4          plaintiff can show that the duty breached was owed to her individually, rather
           than to the public in general. The special relationship exception to the public duty
5          doctrine describes one situation in which a duty is said to be owed to a specific
           individual. To establish this exception, the plaintiff must show that there is some
6          form of privity between the plaintiff and the public entity that differentiates the
           plaintiff from the general public, that the public entity made an express assurance
7          to the plaintiff, and that the plaintiff justifiably relied on the assurance.

8    *Bratton v. Welp*, 145 Wash.2d 572, 576-77 (2002).

9
10         Whether a special relationship exists, and thus whether the public duty doctrine defense

11   is available to Defendants here, is a fact intensive inquiry.  Particularly, in regard to the second

12   prong of the test, there are issues of fact as to whether the Defendants made express assurances

13   to Plaintiffs.  Richard Bakay claimed Yarnes and Kellas made express assurances their cats

14   would not be killed.  Dkt. 50, at 2.  Yarnes and Kellas deny making any assurances.  Dkts. 57

15   and 58.  Plaintiffs' Motion for Summary Judgment on Defendants' public duty doctrine defense

16   should be denied insofar as it is based on the special relationship exception to the public duty

17   doctrine defense as a result.

18         Plaintiffs' further attempts to create, in essence, a fifth exception to the public duty

19   doctrine defense is unavailing.  Plaintiffs argue that the public duty defense should not be

20   available to Defendants because they violated a bailment relationship when they killed the cats,

21   i.e. they breached a contract with Plaintiffs.  Plaintiffs offer no authority for this proposition.

22   Plaintiffs Motion should be denied insofar as it is based on this proposition.

23
24         Defendants additionally moved to strike the "oral interview" of Dr. Tev Barros.  Dkt. 55.

25   This motion should be denied as moot because the evidence relates to Plaintiffs' bailment

26   arguments dealt with above in section c.

d.    *Conclusion on Summary Judgment Motion*

Plaintiffs' Motion for Summary Judgment should be granted, in so far as Defendants raise the public duty doctrine defense to their actions under RCW 16.52, based on the plain language of RCW 16.52.210.  Plaintiffs' other bases for a grant of summary judgment, the legislative intent and special relationship exceptions to the pubic duty doctrine, are unpersuasive and the Motion for Summary Judgment should be denied on those bases.

**III.    CONCLUSION**

The Court is curious if and when Defendants plan to raise a qualified immunity defense to the 42 U.S.C. § 1983 claims.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The immunity is "immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Because qualified immunity provides an immunity from suit, it should be raised at the earliest stage, and may affect this Court's jurisdiction over state claims.  28 U.S.C. § 1367.  Counsel should advise the Court if and when this defense will be raised.

**IV.    ORDER**

Therefore, it is now

**ORDERED** that:

1) Clallam County's Motion for Partial Judgment on the Pleadings to Dismiss Emotional Distress, Loss of Consortium and Lost Profits Claims (Dkt. 48) is **GRANTED, in part, and DENIED in part**, as follows:

- Clallam County's motion to dismiss Plaintiffs' claim for negligent infliction of emotional distress with prejudice is **GRANTED**;

•     Clallam County's motion to dismiss Plaintiffs' claim for intentional infliction of emotional distress with prejudice is **DENIED**;

•     Clallam County's motion to dismiss Plaintiffs' claim for loss of consortium/companionship with prejudice is **GRANTED**;

•     Clallam County's motion to dismiss emotional distress damages for Plaintiffs' conversion/trespass to chattel claim is **GRANTED**;

•     Clallam County's motion to dismiss emotional distress damages for Plaintiffs' nuisance, wrongful invasion of right to custody of a corpse, breach of contract, and 42 U.S.C. § 1983 claims is **DENIED WITHOUT PREJUDICE**;

•     Clallam County's motion to preclude Plaintiffs from claiming both the market value of the destroyed and spayed/neutered cats and the value of any offspring that they may have produced is **GRANTED**.

2) To the extent Plaintiffs have made a motion to certify a question to the Washington State Supreme Court (Dkt. 59) it is **DENIED WITHOUT PREJUDICE**.

3) Plaintiffs' Motion for Summary Judgment on Defendants' Public Duty Doctrine Affirmative Defense (Dkt. 49) is **GRANTED**, in part, insofar as Defendants intend to raise it in regard to actions taken pursuant to RCW 16.52, and **DENIED** otherwise.

4) Defendants' Motion to Continue Plaintiffs' Motion for Summary Judgment in order to gain more time for discovery (Dkt. 55) is **DENIED**, because no additional factual inquiry is necessary.

5) Defendants' Motion to Strike the "oral interview" of Tev Barros (Dkt. 55) is **DENIED as MOOT** because the evidence relates to Plaintiffs' arguments on an exception to the public duty doctrine which have no basis in law.

    The Clerk of the Court is instructed to send uncertified copies of this Order to all

counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this day of 19th of July, 2005.

Robert J. Bryan
United States District Judge

ORDER - 17