1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

1

2

ANNETTE BAKAY and RICHARD
BAKAY, wife and husband,

3

Plaintiffs,

Case No.  C04-5803RJB

4

v.

5

LAURIE A. YARNES, in her individual and
official capacity as CLALLAM COUNTY
ANIMAL CONTROL OFFICER; LAURIE
A. YARNES and TODD A. YARNES, a
marital community; TRACEY KELLAS, in
her individual and official capacity as
CLALLAM COUNTY ANIMAL
CONTROL OFFICER, and RANDOLPH J.
KELLAS, husband and wife, a marital
community; CLALLAM COUNTY ex rel.
CLALLAM COUNTY SHERIFF'S OFFICE
and CLALLAM COUNTY ANIMAL
CONTROL, a Washington municipal
corporation; CHARLES B. SCHRAMM, in
his individual and official capacity as
PRESIDENT OF HUMANE SOCIETY OF
CLALLAM COUNTY (UBI 601-141-356),
a Washington nonprofit corporation;
CHARLES B. SCHRAMM and JANE DOE
SCHRAMM, a marital community;
HUMANE SOCIETY OF CLALLAM
COUNTY (UBI 601-141-356), a
Washington nonprofit corporation; TEV
BARROS, D.V.M. (vt6853), individually;
TEV M. BARROS and JANE DOE
BARROS, a marital community; and DOES
1-10,

ORDER DENYING PLAINTIFFS'
SECOND MOTION FOR PARTIAL
SUMMARY JUDGMENT ON
DEFENDANT LAURIE YARNES
AND DEFENDANT TRACEY
KELLAS' MALICIOUS
PROSECUTION COUNTERCLAIM

6

7

8

9

10

11

12

13

14

15

16

17

18

Defendants.

19

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment

20

on Defendant Laurie Yarnes and Defendant Tracey Kellas's Malicious Prosecution Counterclaim

21

(Dkt. 70).  The Court has considered the pleadings filed in support of and in opposition to the

22

motion and the file herein.

23

PROCEDURAL AND FACTUAL BACKGROUND

24

Plaintiffs' pleadings indicate that this matter arose after Defendants searched the Lost

25

Mountain Cattery located on Plaintiffs' property in Sequim, Washington.  Dkt. 46.  On or

26

around December 10, 2001, Defendants seized approximately 68 "purebred" cats, and destroyed

ORDER
Page - 2

40 of them without Plaintiffs' permission. *Id.* at 2.

According to the Complaint, in late November 2001, Clallam County received a barking complaint from Plaintiffs' neighbor, prompting Animal Control Officer Yarnes to visit Plaintiffs' property. *Id.* at 4. Plaintiffs were out of town. *Id.* Defendant Yarnes talked with a substitute caretaker and the substitute caretaker's mother, the latter of whom "expressed concern for some of the cats housed inside the property." *Id.* Yarnes returned the following day and made a video tape. *Id* at 5. After obtaining a search warrant, which Plaintiffs contend was illegal, members of the Clallam County Sheriff's Office returned to Plaintiffs' property on December 10, 2001 and seized approximately 68 cats. *Id.* Plaintiffs were home at the time of the seizure. *Id.*

While the Clallam County Sheriff's Office was at Plaintiffs' residence seizing the cats, Plaintiff Richard Bakay contends that he asked Yarnes and another animal control officer, Defendant Tracey Kellas, if they intended to euthanize certain cats. Dkt. 50, at 2. Bakay states they assured him no harm would come to the cats as long as he complied with the notice they gave him, which indicated that he had 15 days to petition in court for the cats' return. *Id.* Yarnes and Kellas deny giving Richard Bakay any such assurances. Dkts. 57 and 58.

The Complaint indicates veterinarian Defendant Tev M. Barros, D.V.M., examined the cats and ordered the euthanasia of at least 42 of them. Dkt. 46, at 4. Plaintiffs' Complaint alleges that even though Dr. Barros was video taped examining the cats and making the decision to euthanize each animal, Yarnes and Kellas were hidden off camera making signals to Dr. Barros as to which animals should be killed. *Id.* at 7. That evening and the next morning, Defendants killed the cats. *Id.* at 6. Later, Kellas served a search warrant on Plaintiffs' veterinarian, Dr. Linda Allen, and seized two cats, one of which was euthanized. *Id.*

According to the Complaint, in late December 2001, the Clallam County Prosecuting Attorney's Office filed 84 counts of animal cruelty charges against Plaintiff Annette Bakay. *Id.* at 6. Clallam County then lost the bodies of the euthanized cats. *Id.* All counts against Annette

1   Bakay were dismissed on November 12, 2002 pursuant to an Agreed Motion to Continue for

2   Dismissal signed August 27, 2002. *Id.*

3          The remaining 27 cats were returned to Plaintiffs, and Defendants have not had any of

4   Plaintiffs' cats in their possession since 2002. *Id.* According to the Complaint, Plaintiffs spayed

5   and neutered more than one half the remaining cats for various reasons. *Id.* Plaintiffs also lost

6   their Cat Fanciers' Association (CFA) license. *Id.*

7          As a result of the seizure and destruction of the cats, Plaintiffs have alleged violations of

8   the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as a basis for

9   claims under 42 U.S.C. § 1983, and several state law claims. Dkt. 46. Plaintiffs filed their

10  Complaint on November 29, 2004. Dkt. 1. Defendants Laurie Yarnes and Tracey Kellas filed a

11  Counterclaim for malicious prosecution under RCW 4.24.350(2) on January 28, 2005. Dkt. 22.

12                          MOTION FOR SUMMARY JUDGMENT

13         On August 19, 2005, Plaintiffs filed a motion for summary judgment on Defendant

14  Laurie Yarnes and Tracey Kellas's malicious prosecution counterclaim, requesting that (1)

15  statute RCW 4.24.350(2) be declared unconstitutional, and (2) Defendants' counterclaim be

16  dismissed on the basis that Plaintiffs have stated a prima facie case that does not, as a matter of

17  law, give rise to liability under the malicious prosecution statute.

18         Plaintiffs contend that RCW 4.24.350(2), the malicious prosecution statute, is

19  overbroad, and unconstitutionally deters citizens from exercising their fundamental right to

20  petition the government for redress by unreasonably chilling well-founded claims. Dkt. 70, at 4.

21  Plaintiffs also contend that the statute grants special privileges to law enforcement officers in

22  violation of the Equal Protection Clause of the state and federal constitutions. *Id.* at 5. Plaintiffs

23  also contend that the statute violates the First Amendment by placing a greater burden on a

24  plaintiff's speech when suing a police officer, because the statute allows for liquidated damages,

25  attorneys' fees, and costs for frivolous claims, even when the officer has not suffered damages.

26  *Id.* Plaintiffs state that "[e]ven if one brings a well-founded (but unsuccessful) lawsuit, the

litigant faces: (1) a fine of up to $1,000 for liquidated damages; (2) a judgment against her for attorney's fees; and (3) a judgment against her for bringing frivolous, unfounded claims against police officers, but also for any legitimate but fruitless claim seeking redress for grievances." *Id.* at 6. Plaintiffs contend that RCW 4.24.350(2) is preempted by 42 U.S.C. § 1988 and Fed. R. Civ. P. 11(c)(2), which permit the Court to award reasonable attorneys' fees and costs to the prevailing defendant when faced with frivolous claims. *Id.* at 15. Plaintiffs argue that such protections afford defendant police officers more than adequate remedies for frivolous claims. *Id.*

Plaintiffs also contend that they have stated a prima facie case that does not, as a matter of law, give rise to liability under RCW 4.24.350(2). *Id.* at 18. Plaintiffs note that the burden rests on Defendants to prove malicious prosecution, which requires a showing that Plaintiffs lacked probable cause to institute or maintain the action, and that the action was brought with malice. *Id.* Plaintiffs also note that Washington case law requires a civil plaintiff to merely have a reasonable belief that the relevant facts can be established through the trial process to avoid liability under the malicious prosecution statute. *Id.* at 19. Plaintiffs contend that probable cause is evidenced by, among other things, testimony from Defendant Tev M. Barros, D.V.M., in which he allegedly admits that there was no medical necessity to kill Plaintiffs' cats (Dkt. 51) and that he allowed Defendants Todd Yarnes and Tracey Kellas to interfere with his professional judgment (Dkt. 70-3).

Defendants contend that RCW 4.24.350 does not abridge the First Amendment's right of access to the courts or the Fourteenth Amendment's guarantee of equal protection. Dkt. 97, at 7. Defendants argue that the First Amendment does not protect against frivolous litigation, and that RCW 4.24.350 passes the rational basis test because it does not create a suspect classification. *Id.* at 7-10. Defendants further argue that federal statutes for attorney fee-shifting do not preempt state malicious prosecution claims, such as those brought under RCW 4.24.350, because there is no evidence that Congress has expressly or impliedly preempted

1    RCW 4.24.350 or similar statutes. *Id.* at 13-14.

2         Defendants also contend that Plaintiffs have not shown that they had probable cause to

3    bring their action. *Id.* at 15.  Defendants concede that the existence of probable cause to initiate

4    a lawsuit is an absolute defense to a malicious prosecution counterclaim, but contend that

5    Plaintiffs lack probable cause and are using their own misconduct as a basis for profit.  *Id.*

6    Defendants argue that Plaintiffs' declaration of their alleged animal control expert, Michael

7    Burgwin, should be inadmissible because Burgwin's opinions are conclusory, not based on any

8    discussion of reviewed evidence, and not helpful to the trier of fact.  *Id.* at 16.  Defendants

9    further argue that the numerous complaints about Plaintiffs' mistreatment of their felines,

10   coupled with the declaration of licensed veterinarian Teri Byrd, indicate that Plaintiffs are

11   seeking "to misuse judicial process by filing an action known to be false and unfounded"

12   (quoting RCW 4.24.350(1)).  *Id.* at 16-17.

                                    SUMMARY JUDGMENT STANDARD

13

14        Summary judgment is proper only if the pleadings, depositions, answers to

15   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

16   genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

17   law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the

18   nonmoving party fails to make a sufficient showing on an essential element of a claim in the case

19   on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

20   323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could

21   not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v.*

22   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

23   significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P.

24   56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

25   supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

26   of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc.*

1    *v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

2        The determination of the existence of a material fact is often a close question.  The court

3    must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

4    e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec.*

5    *Serv., Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

6    of the nonmoving party only when the facts specifically attested by that party contradict facts

7    specifically attested by the moving party.  The nonmoving party may not merely state that it will

8    discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

9    to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.

10   Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

11   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

                                    DISCUSSION

12   A.      MOTION TO CHALLENGE CONSTITUTIONALITY OF RCW 4.24.350(2)

13        Plaintiffs have requested that this Court declare RCW 4.24.350(2) unconstitutional due

14   to its overbreath, and its chilling effect on free speech as protected by the First Amendment.

15   Plaintiffs further argue that the statute grants special privileges to law enforcement officers in

16   violation of the Equal Protection Clause of the state and federal constitutions.  The following

17   discussion is taken, in part, from an oral opinion rendered by the undersigned in the case of

18   *Thomas v. City of Tacoma*, United States District Court for the Western District of Washington,

19   Case No. C01-5138RJB.  (Therefore, the first person is used in places.)

20        I have struggled with this statute over the years.  I do not like this statute, because I do

21   not believe it necessary.  I think it is sometimes abused by the very people it is designed to

22   protect, that is, the police officers.  Further, I believe that the original common law on malicious

23   prosecution was adequate to address the problems that are addressed by RCW 4.24.350(2).  My

24   feelings about these things, however, is not justification for constitutional analysis, so I will leave

25   aside my personal views about the wisdom of the statute.

26

ORDER
Page - 7

The challenge to this statute is based on both state and federal constitutional grounds. As a matter of history, the issue of what elements constitute a malicious prosecution claim started in 1942 with *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485 (1942), which provided common law elements of the claim. The element of damages required the plaintiff to suffer injury as a result of wrongful prosecution. *Id.* at 497. *Peasley*, and its line of authority, was modified in 1954 by *Petrich v. McDonald*, 44 Wn.2d 211, 221-22 (1954), which held that there is no cause of action for malicious prosecution unless an arrest or special injury was sustained. In 1979, for reasons unknown, the Washington Supreme Court changed the damage elements, requiring special damages, arrest, and/or seizure of property. *Gem Trading Co., Inc. v. Cudahy Corp.*, 92 Wn.2d 956, 966 (1979). I suspect that the Court was concerned with public policy each time it narrowed the malicious prosecution common law claim, first in *Petrich* and later in *Gem Trading*. In response to *Gem Trading*, the legislature, in its wisdom, adopted the statute that is here at issue. They did so with the findings that are now part of the statute's historical and statutory notes.

Those findings are clear, and it is interesting to note that the only difference from the common law and the legislature's version is the elimination of the elements of special damages, arrest, and seizure of property to show damages. They eliminated these elements only for judicial officers, prosecuting authorities, and law enforcement officers. That limitation is at issue here in this constitutional question. The counterclaim, brought under RCW 4.24.350(2), is attacked on both First Amendment and Fourteenth Amendment grounds; that is, the Petition Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. It is also attacked on equivalent state constitutional grounds, which I take to be Article I, Section 4 of the State Constitution, which addresses the right of petition, and Article I, Section 12, which speaks to special privileges and immunities (equal protection, if you will).

In *Silveira v. Lockyer*, 312 F.3d. 1052 (2002), the Court of Appeals for the Ninth Circuit addressed the Second Amendment right to possess arms, which is not at issue here. The Court,

1    however, speaking through Judge Reinhardt, set out very well the standard of review that we

2    are dealing with in this case:

3          When a state statute burdens a fundamental right or targets a suspect class, that
           statute receives heightened scrutiny under the Fourteenth Amendment's Equal
4          Protection Clause.  Statutes that treat individuals differently based on their race,
           alienage, or national origin are subjected to strict scrutiny and will be sustained
5          only if they are suitably tailored to serve a compelling state interest.  Statutes
           infringing on fundamental rights are subject to the same searching review.
6          However, if a legislative act neither affects the exercise of a fundamental right, nor
           classifies persons based on protected characteristics, then that statute will be
7          upheld if the classification drawn by the statute is rationally related to a legitimate
           state interest.  *Id.* at 1087-88 (internal citations and quotations omitted).

8

9          The Supreme Court has observed that the rational-basis test is a relatively relaxed
           standard reflecting the court's awareness that the drawing of lines that create
10         distinctions is primarily a task for the legislatures.  Nevertheless, several general
           principles may be distilled from the several (and sometimes contradictory) cases in
11         which the Supreme Court has applied the test.  First, in order for a state action to
           trigger equal protection review at all, that action must treat similarly situated
12         persons disparately.  Second, when assessing the validity of legislation under the
           rational-basis test, the general rule is that legislation is presumed to be valid and
13         will be sustained if the classification drawn by the statute is rationally related to a
           legitimate state interest.  Third, there must exist some rational connection between
14         the state's objective for its legislative classification and the means by which it
           classifies its citizens.  Although rational-basis review is undoubtedly
15         deferential–indeed, a paradigm of judicial restraint–it is nevertheless our duty to
           scrutinize the connection, if any, between the goal of a legislative act and the way
16         in which individuals are classified in order to achieve that goal.  *Id.* at 1088
           (internal citations and quotations omitted).

17         Finally, the burden falls upon the party attacking a legislative classification
           reviewed under the rational-basis standard to demonstrate that there is no
18         reasonable basis for the challenged distinction.  When a statute is reviewed under
           the rational-basis test, the burden is on the one attacking the legislative
19         arrangement to negative every conceivable basis which might support it.  The
           legislative record need not contain empirical evidence to support the classification
20         so long as the legislative choice is a reasonable one.  The Equal Protection Clause
           does not demand for purposes of rational-basis review that a legislature or
21         governing decision-maker actually articulate at any time the purpose or rationale
           supporting its classification.  Although the government is relieved of providing a
22         justification for a statute challenged under the rational-basis test, such a
           justification must nevertheless exist, or the standard of review would have no
23         meaning at all.  Even in the ordinary equal protection case calling for the most
           deferential of standards, we insist on knowing the relation between the
24         classification adopted and the object to be attained.  *Id.* at 1089 (internal citations
           and quotations omitted).

25

26   This lengthy citation accurately sets out the standards faced by this Court in this particular

attack on this particular statute.

Addressing first the right to petition, we know that the state views this right more narrowly than the federal government. The state right is basically narrowed to political questions, while the federal right includes the right to petition courts. Here, Plaintiffs claim that the malicious prosecution statute chills the right of access to the courts. What struck me about this claim is that it is essentially an <u>ipse dixit</u> argument, which means, "because I said so." The argument that the Plaintiff makes is basically an argument without an underlying factual basis or showing. It appears based on no more than Plaintiffs' human experience regarding how such things affect people. That argument fails in the face of legislative findings. There is simply not a showing here sufficient to justify the conclusion that this statute in some way chills the right of access to the courts. In addition, in this case, Mr. Karp's clients are certainly not chilled by the existence of this statute. They have full access to the court and have brought their claim (and numerous motions) in the face of the possibility that there would be a counterclaim based on RCW 4.24.350(2). We also know that the Supreme Court has repeatedly held that the First Amendment does not protect suits that are both objectively baseless and subjectively motivated by an unlawful purpose. Plaintiffs' First Amendment argument fails because a rational reason is set forth in the statute both for the classification and for the statute itself, and there is a rational relationship between the stated reason for the statute and the statute's content. Further, strict scrutiny does not apply to the First Amendment argument here. A malicious prosecution claim, in any context, requires that the claimant prove malice and a want of probable cause. A malicious prosecution claim that fails to prove these elements, that is, a case that is well founded but unsuccessful, will fail as a matter of law. In sum, there is a rational relationship between the law and the reason for the law. The claim does not involve a fundamental right and strict

scrutiny does not apply.

With regard to the equal protection argument under the Fourteenth Amendment and the state constitution, the right of access to the courts again arises as an issue.  We know that the equal protection doctrine prohibits a state from denying to any person within its jurisdiction the equal protection of the laws.  Essentially, this is a maxim that all persons similarly situated should be treated alike.  However, in looking at the beneficiaries of this statute–police, prosecutors, and judges–we note that they are set apart for many reasons.  We give them powers no one else has, such as the power to arrest, issue warrants, bring lawsuits, and start criminal proceedings against individuals.  They have a unique role in our society.  We also know that the law has given protections to police, judges, and prosecutors that other members of our society do not have.  Those protections are given because of the unique nature of their work.  The qualified immunity possessed by prosecutors and absolute immunity possessed by judges are particularly salient examples of special protections.  It is not a suspect classification to treat police officers, judges, and prosecutors as a separate class or to distinguish them from the rest of the public.  It is appropriate to come to such conclusion because of the unique roles played in society by this class of individuals.

Addressing next the right to sue:  The right to sue is a right, but not a fundamental right in the way that some other rights are fundamental.  The right to sue is a limited and restricted right.  If you do not like something about our country, you have an absolute and fundamental right to petition the government through the political process, but you do not always have a similar right to bring lawsuits.  For example, just because one thinks a law is unjust or unfair, a private citizen does not have the right to bring a lawsuit to have the law thrown out, because such actions are limited and restricted by statute, case law, and common law.  No one has an

absolute right to sue under all circumstances.  Limits include, of course, not being able to bring a

lawsuit based on malice, or without probable cause.  Here, however, contrary to Plaintiffs'

argument, the right to sue is not really the issue.  What is at issue is the elements of damages

that are provided to people classified as prosecutors, judges, and police, rather than the right to

bring a claim when there is lack of probable cause and malice.  It does initially seem unfair that

Defendant police officers have different elements of proof, but as I have indicated above, there is

a solid reason for the distinction and classification set forth in the statute.

It is also important to note that fairness runs two ways.  The police and prosecutors have

no right to bring a frivolous claim, or a claim without probable cause, and–as Plaintiffs pointed

out–a plaintiff is also protected under Fed. R. Civ. P. 11(c) from malicious counterclaims.  I

emphasize this simply to illustrate that police, just the same as everybody else, are restricted by

the law from bringing frivolous counterclaims, and from bringing counterclaims based on malice

or want of probable cause.  Fed. R. Civ. P. 11(c) speaks to all claims, not just the kind of claims

we are talking about here.  Under Rule 11, we have sanctions available against anyone, and

certainly any lawyer, who brings a malicious case or a case without probable cause.  Not

surprisingly, the existence of these sanctions have not chilled the rights of access to the courts.

Another common complaint about RCW 4.24.350(2) is that it allows a police officer's

counterclaim to be brought in the plaintiff's case rather than leaving it for later proceedings.

This portion of the statute has the potential of muddying the waters of the plaintiff's case

unfairly.  It is, however, essentially a procedural provision and any unfairness can be eliminated

by bifurcating the trial so that issues of the counterclaim are not addressed unless–and

until–defendants have prevailed on the plaintiff's claim.

While I believe that the law did not need to be changed from the common law that

developed before the 1940s, it has been changed, and we have to live with it even though it provides a remedy to the police, prosecutors, and judges that are not given to others. RCW 4.24.350(2) does not involve a suspect classification nor does it violate a fundamental right. Further, strict scrutiny does not apply to the First and Fourteenth Amendment arguments, and the classification and distinction created by the statute bears a rational relationship to the legitimate purpose set forth in the statutory history. RCW 4.24.350(2) is not unconstitutional.

  B.   MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' MALICIOUS PROSECUTION COUNTERCLAIM

Plaintiffs also move to dismiss Defendants' counterclaim for malicious prosecution on summary judgment. Plaintiffs argue that, in order to prove malicious prosecution under RCW 4.24.350(2), Defendants must demonstrate that Plaintiffs lacked probable cause to institute or maintain their action. Plaintiffs contend that their evidence shows as a matter of law that they had probable cause, and, therefore, Defendants' counterclaim for malicious prosecution should be dismissed.

In *Loeffelholz v. Citizens for Leaders with Ethics and Accountability Now*, 119 Wn. App. 665, 695-96 (2004), the court discussed motions for summary judgment against a malicious prosecution claim:

> At trial, the malicious prosecution claimant has the burden of proving each necessary element. But when a malicious prosecution defendant moves for summary judgment before trial, he or she bears the initial burden of showing the absence of an issue of material fact. Only if he or she meets this burden is the non-moving party obligated to produce facts sufficient to show the presence of an issue of material fact. Accordingly, the first issue here is whether [the moving party] bore their initial burden of showing the absence of a material issue of fact with respect to the absence of probable cause—or, when the double negatives are eliminated, whether [the moving party] showed as a matter of law (i.e., so clearly that reasonable minds could not differ) that they had probable cause to bring the federal case. If they did not show probable cause that clearly, its presence or absence must be decided by a trier of fact. (Internal citations and quotations

1    omitted.)

2        Plaintiffs have not submitted any evidence that shows that probable cause for their action

3    exists as a matter of law.  In support of their motion for summary judgment, Plaintiffs have

4    submitted (1) a declaration from Plaintiffs Annette and Richard Bakay, (2) four letters stating

5    the opinions of four "experts" in the area of animal control, and (3) testimony of Defendant Tev

6    Barros, the veterinarian that allegedly approved the euthanization of Plaintiffs' cats.  The

7    declaration and opinion letters essentially repeat the allegations found in Plaintiffs' Complaint,

8    and do not add anything substantial to the argument that Plaintiffs have probable cause to bring

9    their action.  Further, Defendant Barros' testimony is ambiguous.  Plaintiffs contend, among

10   other things, that Defendant Barros' testimony shows that he allowed others to interfere with his

11   professional judgment, while the testimony simply states that "all of us were partially

12   responsible" for the decision to euthanize the cats.  Plaintiffs' evidence falls short of meeting the

13   standards set forth in *Loeffelholz*, which require Plaintiffs to show the absence of an issue of

14   material fact–or, stated in a different way–which require Plaintiffs to show, in a manner so clear

15   that reasonable minds could not differ, that they had probable cause to bring their action.

16   Because Plaintiffs have failed by a wide margin to make this showing, the issue of whether

17   probable cause exists must be decided by a trier of fact.

18                                        ORDER

19
20       Therefore, it is hereby

21
22       **ORDERED** that Plaintiffs' Second Motion for Partial Summary Judgment on Defendant

23   Laurie Yarnes and Defendant Tracey Kellas's Malicious Prosecution Counterclaim (Dkt. 70) is

24   **DENIED** as follows:

25
26

ORDER
Page - 14

1) Plaintiffs' motion to challenge constitutionality of RCW 4.24.350(2) is **DENIED**; and

2) Plaintiffs' motion to dismiss Defendant Laurie Yarnes and Defendant Tracey Kellas's counterclaim for malicious prosecution is **DENIED** without prejudice.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 4th day of October, 2005.

Robert J. Bryan
United States District Judge

ORDER
Page - 15