1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

ANNETTE BAKAY and RICHARD
BAKAY, wife and husband,

10                    Plaintiffs,

Case No.  C04-5803RJB

11        v.

12  LAURIE A. YARNES, in her individual and
official capacity as CLALLAM COUNTY
13  ANIMAL CONTROL OFFICER; LAURIE
A. YARNES and TODD A. YARNES, a
14  marital community; TRACEY KELLAS, in
her individual and official capacity as
15  CLALLAM COUNTY ANIMAL
CONTROL OFFICER, and RANDOLPH J.
16  KELLAS, husband and wife, a marital
community; CLALLAM COUNTY ex rel.
17  CLALLAM COUNTY SHERIFF'S OFFICE
and CLALLAM COUNTY ANIMAL
18  CONTROL, a Washington municipal
corporation; CHARLES B. SCHRAMM, in
19  his individual and official capacity as
PRESIDENT OF HUMANE SOCIETY OF
20  CLALLAM COUNTY (UBI 601-141-356),
a Washington nonprofit corporation;
21  CHARLES B. SCHRAMM and JANE DOE
SCHRAMM, a marital community;
22  HUMANE SOCIETY OF CLALLAM
COUNTY (UBI 601-141-356), a
23  Washington nonprofit corporation; TEV
BARROS, D.V.M. (vt6853), individually;
24  TEV M. BARROS and JANE DOE
BARROS, a marital community; and DOES
25  1-10,

ORDER GRANTING DEFENDANT
TEV BARROS' MOTION FOR
SUMMARY JUDGMENT

26                    Defendants.

ORDER
Page - 1

1

2       This matter comes before the Court on Defendant Tev Barros' Motion for Summary

3   Judgment (Dkt. 111).  The Court has considered the pleadings filed in support of and in

4   opposition to the motions and the file herein.

5                   PROCEDURAL AND FACTUAL BACKGROUND

6       The parties' pleadings indicate that this dispute arose after Defendant Clallam County

7   Animal Control seized approximately 68 cats from the Lost Mountain Cattery located on

8   Plaintiffs' property in Sequim, Washington.  On December 9, 2001, Defendant obtained a search

9   warrant that authorized the seizure of all of Plaintiffs' cats, based on testimony and belief that

10  the cats were neglected and/or abused.  The next day, Defendant seized 68 cats that allegedly

11  appeared neglected and unhealthy, and later destroyed 40 of them without Plaintiffs' permission.

12  The following is a brief summary of the alleged facts leading up to, and following, the seizure of

13  Plaintiffs' cats.

14      According to Plaintiffs' Complaint, in late November 2001, Clallam County received a

15  barking dog complaint from Plaintiffs' neighbor, prompting Animal Control Officer Laurie

16  Yarnes to visit Plaintiffs' property.  Dkt. 46, at 4.  Plaintiffs were out of town.  *Id.*  On a return

17  visit, Defendant Yarnes talked with a substitute caretaker and the substitute caretaker's mother,

    the latter of whom "expressed concern for some of the cats housed inside the property." *Id.*

18

19      Defendant Yarnes contends that the substitute caretaker, Danielle Orloff, and her

20  mother, Tina Rocheleau, were very concerned about the welfare of the cats.  Dkt. 116, at 2.

21  Defendant Yarnes states that Orloff and Rocheleau described horrific conditions in which over

22  70 cats were forced to live, which included cat vomit and feces spread throughout Plaintiffs'

23  residence, as well as the overwhelming odors of urine and feces.  *Id.* at 3.  Defendant Yarnes

24  contends that Orloff and Rocheleau also stated that many of these cats appeared ill and

25  neglected, with matted coats, runny eyes, and similar health problems.  *Id.*  During this meeting,

26  Rocheleau escorted Defendant Yarnes around the exterior of Plaintiffs' residence, during which

1   time she saw, through the windows, many cats in enclosed spaces with insufficient ventilation.

2   *Id.*

3          Shortly thereafter, Plaintiffs' primary caretaker, Andrea Gilles, returned an earlier phone

4   call from Defendant Yarnes, and agreed to meet Defendant Yarnes at Plaintiffs' residence.  *Id.* at

5   4.  Gilles granted Defendant Yarnes permission to inspect the property from the outside.  *Id.*

6   Defendant Yarnes contends that she witnessed cats living in urine puddles, cats with mucus

7   coming out of their noses, and cats in varying degrees of sickness.  *Id.*  Defendant Yarnes also

8   contends that Gilles counted 64 cats living on the premises at that time.  *Id.*

9          After obtaining a search warrant, which Plaintiffs contend was improperly issued,

10  members of the Clallam County Sheriff's Office and Clallam County Animal Control entered

11  Plaintiffs' property on December 10, 2001 and seized approximately 68 cats.  Dkt. 46, at 5.

12  Plaintiffs were home at the time of the seizure.  *Id.*  Plaintiff Richard Bakay contends that he

13  asked Defendant Yarnes and another animal control officer, Defendant Tracey Kellas, if they

14  intended to euthanize certain cats.  Dkt. 50, at 2.  Bakay states that they assured him no harm

15  would come to the cats as long as he complied with the notice they gave him, which indicated

16  that he had 15 days to petition in court for the cats' return.  *Id.*  Yarnes and Kellas deny giving

17  Richard Bakay any such assurances.  Dkts. 57 and 58.

18         Defendant Tev M. Barros, D.V.M., a licensed veterinarian, was present, at the request of

19  Clallam County Animal Control, when the cats were seized.  Plaintiffs allege that Barros

20  examined the cats and ordered the euthanasia of at least 42 of them.  Dkt. 46, at 4.  Plaintiffs

21  also allege that even though Defendant Barros was videotaped examining the cats and making

22  the decision to euthanize several of them, Yarnes and Kellas were hidden off camera making

23  signals to Dr. Barros as to which animals should be killed.  *Id.* at 7.  That evening and the next

24  morning, the Clallam County Humane Society euthanized many of the cats.  *Id.* at 6.  Later,

25  Kellas served a search warrant on Plaintiffs' veterinarian, Linda Allen, and seized two additional

26  cats belonging to the Bakays, one of which was later euthanized.  *Id.*

ORDER
Page - 3

1   In late December 2001, the Clallam County Prosecuting Attorney's Office filed 84

2   counts of animal cruelty charges against Plaintiff Annette Bakay.  *Id.* at 6.  Clallam County later

3   lost the bodies of the euthanized cats.  *Id.*  All charges against Annette Bakay were dropped

4   pursuant to a stipulated motion for dismissal signed August 27, 2002.  *Id.*

5   The remaining 27 cats were returned to Plaintiffs, and Defendants have not had any of

6   Plaintiffs' cats in their possession since 2002.  *Id.*  Plaintiffs later spayed and neutered more than

7   one half the remaining cats for various reasons.  *Id.*  Plaintiffs contend that they lost their Cat

8   Fanciers' Association (CFA) license because of the publicity surrounding the seizure.  *Id.*

9   As a result of the seizure and destruction of the cats, Plaintiffs have alleged violations of

10   the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as a basis for

11   claims under 42 U.S.C. § 1983, and several state law claims.  Dkt. 46.  Plaintiffs filed their

12   Complaint on November 29, 2004.  Dkt. 1.

13   <u>MOTION FOR SUMMARY JUDGMENT</u>

14   On November 1, 2005, Defendant Tev Barros, the veterinarian who performed the

15   examination of the cats the night they were seized, filed a motion for summary judgment (Dkt.

16   111) requesting that the Court dismiss all of Plaintiffs' claims against him in this matter.  In their

17   Complaint and subsequent pleadings, Plaintiffs allege the following claims against Defendant

18   Barros: (1) negligence, (2) gross negligence, (3) trespass to chattels and conversion, (4)

19   violation of federal rights under 42 U.S.C. § 1983, alleging that Barros was a state actor, (5)

20   statutory waste, (6) breach of fiduciary duty, and (7) breach of bailment contract.

21   Defendant Barros contends that on the night of the seizure Officer Yarnes wanted a local

22   veterinarian present to assist her with the cats.  Dkt. 111, at 5.  Officer Yarnes asked Defendant

23   Barros to volunteer for the position, which would entail documenting the condition of the cats

24   and providing an opinion as to whether each cat should remain at the Bakay's cattery or be

25   removed to the Clallam County Humane Society.  *Id.*  Defendant Barros contends that he

26

ORDER
Page - 4

did not have any knowledge of the Bakays or their cattery before he agreed to assist, and that he had never treated any of their animals. *Id.* at 6.

Defendant Barros further contends that he initially understood his role in the seizure of the cats to be limited to providing a basic examination of each cat to determine whether it needed to be removed from the Bakay's cattery for treatment elsewhere. *Id.* The animal control officers did not ask him to diagnose any specific diseases, or to recommend any specific treatments. *Id.* Defendant Barros examined each cat only long enough to determine whether the animal control officers should leave it at the Bakay's property or remove it to the Clallam County Humane Society. *Id.* Defendant Barros and Defendant Yarnes both contend that all treatment decisions, including decisions to euthanize some of the cats, were ultimately made later by Clallam County Humane Society personnel. *Id.*

While examining the cats, Defendant Barros was informed by the animal control officers that the Clallam County Humane Society shelter was not sufficiently equipped to handle so many cats bearing obvious signs of contagious diseases. *Id.* at 7. As a result, they asked Defendant Barros to continue examining the cats and identify the sickest cats, which would later be euthanized at the Humane Society. *Id.* Defendant Barros contends that he protested to the animal control officers about the situation, but also states that he was aware of the risk of the spread of contagious diseases. *Id.* Defendant Barros continued with his examinations, and labeled an index card for each cat with the words "stay," "treat" or "euth." *Id.* It took Defendant Barros about 14 hours to examine all 73 of the Bakay's cats. *Id.* Approximately 68 cats in total were then seized by Clallam County and taken to the Clallam County Humane Society. *Id.* at 8.

Defendant Barros contends that although he was allowed to make recommendations about each cat, the decision to euthanize or treat each cat was ultimately not up to him. *Id.* at 8. Rather, according to Officer Yarnes, personnel at the Clallam County Humane Society performed their own examinations and euthanized about 40 cats based on their own professional

1   judgment. *Id.* Officer Yarnes later testified that the labels on the index cards were "a rating of

2   the severity of the cat's condition," and not a prediction of the cat's fate. *Id.* In one instance,

3   Officer Yarnes scratched out Defendant Barros' recommendation for treatment and wrote

4   "euth" on an index card because "when [Humane Society Executive Director] Judy Nikodym did

5   her examination of the cat she determined it needed to be euthanized, and so she euthanized it."

6   *Id.* at 8.

7       Defendant Barros contends that Plaintiffs have failed to make a sufficient showing with

8   regard to their claims against him. Defendant Barros further contends that his examination of

9   the Bakays' cats was proper under the circumstances, that he did not make the decision to

10  euthanize the cats, and that the cats were properly euthanized according to Washington law.

SUMMARY JUDGMENT STANDARD

11

12      Summary judgment is proper only if the pleadings, depositions, answers to

13  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

14  genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

15  law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the

16  nonmoving party fails to make a sufficient showing on an essential element of a claim in the case

17  on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

18  323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could

19  not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v.*

20  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

21  significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P.

22  56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

23  supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

24  of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc.*

25  *v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

26

1   The determination of the existence of a material fact is often a close question.  The court

2   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

3   e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec.*

4   *Serv., Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

5   of the nonmoving party only when the facts specifically attested by that party contradict facts

6   specifically attested by the moving party.  The nonmoving party may not merely state that it will

7   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

8   to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

9   Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

10  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

<u>DISCUSSION</u>

11

A.   NEGLIGENCE

12

13  Plaintiffs argue that Defendant Barros, the examining veterinarian, was negligent in

14  examining the cats and determining that some should stay while others should be delivered to

15  the Clallam County Humane Society.  Plaintiffs argue that Defendant Barros had a duty not to

16  engage in the "wrongful death" of the cats.  Dkt. 69, at 6.  Specifically, Plaintiffs argue that

17  Defendant Barros' recommendation that many of the cats should be removed, and his notations

18  on the index cards stating "stay," "treat" or "euth," breached this duty by sending many of  the

19  cats to certain death at the hands of the Humane Society.  Plaintiffs argue that Defendant

20  Barros' duty of care is the same common-law duty that may apply to a negligent driver who runs

    over a cat in the road.  The Court disagrees.

21

22  First and foremost, Plaintiffs argument that the cats suffered a wrongful death is without

    merit.  Plaintiffs are essentially arguing that this case is similar to ones in which a companion

23

24  animal is brought to a vet and negligently misdiagnosed, resulting in its untimely death and

    emotional suffering on behalf of the pet's owner.  The case before the Court, however, is much

25

    different.  The record shows that the numerous cats in question were not companion animals,

26

ORDER
Page - 7

but were being bred at a cattery and offered for sale on Plaintiffs' website.  Further, the cats were seized under a facially valid warrant, and were euthanized by the Clallam County Humane Society.  Under RCW 16.52.085(4), euthanasia is allowed at any time for animals seized by the government that are deemed to be "severely injured, diseased, or suffering."  Under Clallam County Code § 17.06.050, animals may be euthanized "as may be determined by the shelter officer or licensed veterinarian to be suffering from serious injury or disease."

A review of the evidence in this matter indicates that several serious diseases have been documented in connection with the Bakay's animals, including feline distemper (panleukopenia), which is highly contagious and devastating to cats.  The evidence also indicates that the presence of this and other diseases was, in part, the rationale for Defendant Barros' decisions regarding which cats would be removed, and which cats were diseased and suffering, and the Humane Society's rationale for later destroying the cats.  Further, the lengthy testimony in this matter–including several video tapes showing the conditions of the cats and their environment at the time of Defendant Barros' examinations–quite simply shocks the conscience of the Court. The condition of these cats and their environment would be characterized as horrible and intolerable by any reasonable person.  Plaintiffs had over 70 cats living in conditions that a reasonable person would find appalling, which included substantial amounts of cat diarrhea covering a good portion of the floors and furniture of Plaintiffs' residence.  There is no question that Defendant Barros' recommendation to remove these cats, and his determination that many of the cats were suffering and diseased, was warranted under these circumstances.

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").   In this case, the evidence of Defendant Barros' proper role in the seizure and destruction of the cats is overwhelming, and Plaintiffs have failed to show any evidence to support their claims against

ORDER
Page - 8

1   him.  No rational trier of fact could find for Plaintiffs and against Defendant Barros with regard

2   to the above claims.

3         Specifically, Plaintiffs' negligence claim fails because they have not shown duty, breach,

4   or causation in regard to Defendant Barros.  In an action for negligence, the burden rests upon

5   the plaintiff to establish "(1) the existence of the duty owed, (2) breach of that duty, (3) a

6   resulting injury, and (4) proximate cause." *Tincani v. Inland Empire Zoological Society*, 124

7   Wn.2d 121, 127-28 (1994).  The existence of a duty is a threshold question.  If there is no duty,

8   then a plaintiff does not have a valid claim. *Folsom v. Burger King*, 135 Wn.2d 658, 671

9   (1998).  Plaintiffs have the burden of establishing the existence of a duty. *Lake Washington Sch.*

10  *Dist. No. 414 v. Schuck's Auto Supply, Inc.*, 26 Wn.App. 618, 621 (1980).  In a negligence

11  action, a defendant's duty may be predicated on violation of statute of or common law principles

12  of negligence. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 932 (1982).

13        Here, Plaintiffs have failed to show that any Washington statute extends an actionable

14  duty to veterinarians who assist with law enforcement seizures.  RCW 16.52 *et. seq.* addresses

15  animal seizure and destruction by animal control, but does not set forth any standards to which a

16  veterinarian must adhere in assisting animal control officers.  Plaintiffs have also failed to

17  provide common law supporting their proposition that Defendant Barros owed a duty of care to

18  the Bakays with regard to the examinations, which were conducted by request of Clallam

19  County Animal Control and performed for the benefit of Clallam County Animal Control in a

20  law enforcement proceeding.

21        Assuming, however, that Defendant Barros owed a duty of reasonable care to Plaintiffs,

22  Plaintiffs have again failed to show any evidence that Defendant Barros breached his obligations

23  as a veterinarian in this matter.  When reasonable minds could reach but one conclusion, a trial

24  court may determine such factual issues as a matter of law. *Ruff v. County of King*, 125 Wn.2d

25  697, 704 (1995).  Here, there is no evidence that Defendant Barros took any action in breach of

26  reasonable prudence.  In the case of the Bakay's cats, the record indicates that Defendant

Barros' recommendations of euthanasia were predicated upon a reasonable examination and assessment, and the determination that the cats in question were neglected, diseased and suffering.  Such decisions to euthanize cats who are suspected of suffering from feline distemper or other serious diseases are routinely made by veterinarians without first obtaining conclusive diagnostic tests.  Because of the devastating impact of distemper on cats, and the recorded condition of these cats, reasonable minds could not find that Defendant Barros breached his obligations in this matter.

Finally, Plaintiffs have failed to show that Defendant Barros' conduct proximately resulted in the destruction of the cats.  The record indicates that the cats were examined by the Clallam County Humane Society prior to being euthanized, and that the decision to do so was ultimately in the hands of the Humane Society.  Plaintiffs have produced no evidence to the contrary.

B.      GROSS NEGLIGENCE

Gross negligence is the failure to exercise slight care.  *Kelley v. State*, 104 Wn. App. 328, 333 (2000).  It is "negligence substantially and appreciably greater than ordinary negligence." *Id.*  There can be no issue of gross negligence without "substantial evidence of serious negligence." *Nist v. Tudor*, 67 Wn.2d 322, 330 (1965).  Here, because Plaintiffs' claim for ordinary negligence fails, so must the claim for gross negligence.

C.      DEFENDANT BARROS AS STATE ACTOR: VIOLATIONS OF
         42 U.S.C. § 1983

Plaintiffs' claim that Defendant Barros is liable under 42 U.S.C. § 1983 is misplaced.  Plaintiffs have failed by a wide margin to develop their initial constitutional claims against Defendant Barros, and have not explained how Defendant Barros violated their rights under the Fourth, Fifth, and Fourteenth Amendments, as well as the equivalent state constitutional provisions.  While Plaintiffs write at length as to why Defendant Barros was a state actor, and why public policy demands that he be held accountable, Plaintiffs seem to take for granted that Defendant Barros' examination and recommendations for Clallam County Animal Control

somehow violated Plaintiffs' constitutional rights. Plaintiffs have failed to show how Defendant Barros is responsible, among other things, for unreasonable search and seizure, violations of procedural and substantive due process, or taking without just compensation. Further, the record does not support such findings. Plaintiffs' claims under 42 U.S.C. § 1983 against Defendant Barros have no merit, and should be dismissed. Therefore, an analysis of whether Defendant Barros was a state actor in this matter is moot.

> D.   PLAINTIFFS' REMAINING CLAIMS AGAINST DEFENDANT BARROS: TRESPASS TO CHATTELS, CONVERSION, STATUTORY WASTE, FIDUCIARY DUTY, AND BREACH OF BAILMENT CONTRACT

The Court declines to offer a lengthy analysis for each of these claims. Suffice it to say that Plaintiffs have not offered a cogent legal argument as to why any of these claims should apply to Defendant Barros in this matter, and the evidence in the record does not support these claims. Similar to an issue-spotting exam in law school, Plaintiffs appear to have taken a "shotgun" approach to litigating this case, including in their complaint any and every claim they could possibly imagine. The Court has already dismissed Plaintiffs' claim for loss of companionship under RCW 4.24.010, the Washington statute that authorizes a claim for injury or death of a child. In regard to the above five claims, the Court finds that the elements of each claim have not been met as a matter of law, and that there are no genuine issues of fact in this matter. Consequently, the claims against Defendant Barros should be dismissed.

ORDER

Therefore, it is hereby

**ORDERED** that Defendant Tev Barros' Motion for Summary Judgment (Dkt. 111) is **GRANTED**. Plaintiffs' claims against Defendant Barros are dismissed with prejudice.

1    The Clerk of the Court is instructed to send uncertified copies of this Order to all

2    counsel of record and to any party appearing *pro se* at said party's last known address.

3    DATED this 21st day of December, 2005.

4

5

6    Robert J. Bryan
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 12