1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANNETTE BAKAY and RICHARD
BAKAY, wife and husband,

               Plaintiffs,

     v.

LAURIE A. YARNES, in her individual and
official capacity as CLALLAM COUNTY
ANIMAL CONTROL OFFICER; LAURIE
A. YARNES and TODD A. YARNES, a
marital community; TRACEY KELLAS, in
her individual and official capacity as
CLALLAM COUNTY ANIMAL
CONTROL OFFICER, and RANDOLPH J.
KELLAS, husband and wife, a marital
community; CLALLAM COUNTY ex rel.
CLALLAM COUNTY SHERIFF'S OFFICE
and CLALLAM COUNTY ANIMAL
CONTROL, a Washington municipal
corporation; CHARLES B. SCHRAMM, in
his individual and official capacity as
PRESIDENT OF HUMANE SOCIETY OF
CLALLAM COUNTY (UBI 601-141-356),
a Washington nonprofit corporation;
CHARLES B. SCHRAMM and JANE DOE
SCHRAMM, a marital community;
HUMANE SOCIETY OF CLALLAM
COUNTY (UBI 601-141-356), a
Washington nonprofit corporation; and
DOES 1-10,

               Defendants.

Case No.  C04-5803RJB

ORDER GRANTING
DEFENDANTS YARNES,
KELLAS, CLALLAM COUNTY
SHERIFF'S OFFICE AND
CLALLAM COUNTY ANIMAL
CONTROL'S MOTION FOR
SUMMARY JUDGMENT
DISMISSAL OF FEDERAL
CLAIMS

This matter comes before the Court on Defendants Yarnes, Kellas, Clallam County Sheriff's Office, and Clallam County Animal Control's Motion for Summary Judgment Dismissal of Federal Claims and Request for Fees Pursuant to 42 U.S.C. § 1988 (Dkt. 116).  The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

PROCEDURAL AND FACTUAL BACKGROUND

The parties' pleadings indicate that this dispute arose after Defendant Clallam County Animal Control seized approximately 68 cats from the Lost Mountain Cattery located on Plaintiffs' property in Sequim, Washington.  On December 9, 2001, Defendant obtained a search warrant that authorized the seizure of all of Plaintiffs' cats, based on testimony and belief that the cats were neglected and/or abused.  The next day, Defendant seized 68 cats that allegedly appeared neglected and unhealthy, and later destroyed 40 of them without Plaintiffs' permission. The following is a brief summary of the alleged facts leading up to, and following, the seizure of Plaintiffs' cats.

According to Plaintiffs' Complaint, in late November 2001, Clallam County received a barking dog complaint from Plaintiffs' neighbor, prompting Animal Control Officer Laurie Yarnes to visit Plaintiffs' property.  Dkt. 46, at 4.  Plaintiffs were out of town.  *Id.*  On a return visit, Defendant Yarnes talked with a substitute caretaker and the substitute caretaker's mother, the latter of whom "expressed concern for some of the cats housed inside the property."  *Id.*

Defendant Yarnes testifies that the substitute caretaker, Danielle Orloff, and her mother, Tina Rocheleau, were very concerned about the welfare of the cats.  Dkt. 116, at 2.  Defendant Yarnes states that Orloff and Rocheleau described horrific conditions in which over 70 cats were forced to live, which included cat vomit and feces spread throughout Plaintiffs' residence, as well as the overwhelming odors of urine and feces.  *Id.* at 3.  Defendant Yarnes testifies that Orloff and Rocheleau also stated that many of these cats appeared ill and neglected, with matted coats, runny eyes, and similar health problems.  *Id.*  During this meeting, Rocheleau escorted

Defendant Yarnes around the exterior of Plaintiffs' residence, during which time she saw, through the windows, many cats in enclosed spaces with insufficient ventilation. *Id.*

Shortly thereafter, Plaintiffs' primary caretaker, Andrea Gilles, returned an earlier phone call from Defendant Yarnes, and agreed to meet Defendant Yarnes at Plaintiffs' residence. *Id.* at 4. Gilles granted Defendant Yarnes permission to inspect the property from the outside. *Id.* Defendant Yarnes contends that she witnessed cats living in urine puddles, cats with mucus coming out of their noses, and cats in varying degrees of sickness. *Id.* Defendant Yarnes also testifies that Gilles counted 64 cats living on the premises at that time. *Id.*

After obtaining a search warrant, which Plaintiffs contend was improperly issued, members of the Clallam County Sheriff's Office and Clallam County Animal Control entered Plaintiffs' property on December 10, 2001 and seized approximately 68 cats. Dkt. 46, at 5. Plaintiffs were home at the time of the seizure. *Id.* Plaintiff Richard Bakay states that he asked Defendant Yarnes and another animal control officer, Defendant Tracey Kellas, if they intended to euthanize certain cats. Dkt. 50, at 2. Bakay states that they assured him no harm would come to the cats as long as he complied with the notice they gave him, which indicated that he had 15 days to petition in court for the cats' return. *Id.* Yarnes and Kellas deny giving Richard Bakay any such assurances. Dkts. 57 and 58.

Defendant Tev M. Barros, D.V.M., a licensed veterinarian, was present, at the request of Clallam County Animal Control, when the cats were seized. Plaintiffs allege that Barros examined the cats and ordered the euthanasia of at least 42 of them. Dkt. 46, at 4. Plaintiffs also allege that even though Defendant Barros was videotaped examining the cats and making the decision to euthanize several of them, Yarnes and Kellas were hidden off camera making signals to Dr. Barros as to which animals should be killed. *Id.* at 7. That evening and the next morning, the Clallam County Humane Society euthanized many of the cats. *Id.* at 6. Later, Kellas served a search warrant on Plaintiffs' veterinarian, Linda Allen, and seized two additional cats belonging to the Bakays, one of which was later euthanized. *Id.*

1    In late December 2001, the Clallam County Prosecuting Attorney's Office filed 84

2  counts of animal cruelty charges against Plaintiff Annette Bakay.  *Id.* at 6.  Clallam County later

3  lost the bodies of the euthanized cats.  *Id.*  All charges against Annette Bakay were dropped

4  pursuant to a stipulated motion for dismissal signed August 27, 2002.  *Id.*

5    The remaining 27 cats were returned to Plaintiffs, and Defendants have not had any of

6  Plaintiffs' cats in their possession since 2002.  *Id.*  Plaintiffs later spayed and neutered more than

7  one half the remaining cats for various reasons.  *Id.*  Plaintiffs contend that they lost their Cat

8  Fanciers' Association (CFA) license because of the publicity surrounding the seizure.  *Id.*

9    As a result of the seizure and destruction of the cats, Plaintiffs have alleged violations of

10  the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as a basis for

11  claims under 42 U.S.C. § 1983, and several state law claims.  Dkt. 46.  Plaintiffs filed their

12  Complaint on November 29, 2004.  Dkt. 1.

13                    MOTION FOR SUMMARY JUDGMENT

14    On November 1, 2005,  Defendants Yarnes, Kellas, Clallam County Sheriff's Office, and

15  Clallam County Animal Control filed a motion for summary judgment seeking dismissal of all

16  federal claims filed by Plaintiffs against them in this matter.  In their motion, Defendants contend

17  that (1) Officer Yarnes' first warrantless search was reasonable and constitutional because a

18  person reasonably believed to possess joint access or control of the premises requested that she

19  conduct the search, (2) Officer Yarnes' second warrantless search was reasonable and

20  constitutional because someone possessing common authority over the premises consented to

21  the search, (3) the judicial warrant authorizing the search of Plaintiffs' property and seizure of

22  their animals was valid, any errors in the affidavit of probable cause were made inadvertently,

23  and absence of these errors would not have altered the neutral and detached judicial officer's

24  finding of probable cause, (4) all procedural due process guarantees of the Fourteenth

25  Amendment were followed when Clallam County executed a valid search warrant with Plaintiffs

26  present, and when providing actual notice of available statutory remedies, and (5) property taken

pursuant to a valid judicial warrant, such as the cats seized in this case, is exempt from the just

compensation clause of the Fifth Amendment, made applicable to the states through the

Fourteenth Amendment.  Defendants also contend that Plaintiffs should be required under 42

U.S.C. § 1988 to pay all of Clallam County's costs and reasonable attorney's fees incurred in

defending the federal claims alleged, because Plaintiffs have aggressively pursued these claims

despite a complete and obvious lack of merit in light of settled and binding case law from the

United States Court of Appeals for the Ninth Circuit and the United States Supreme Court.

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the

nonmoving party fails to make a sufficient showing on an essential element of a claim in the case

on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could

not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P.

56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc.

v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court

must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec.

*Serv., Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).  Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

DISCUSSION

**A.    QUALIFIED IMMUNITY**

Defendants Yarnes, Kellas, Clallam County Sheriff's Office, and Clallam County Animal Control contend that they are entitled to qualified immunity on all federal claims because no federal right was violated, and/or because any federal right violated was not clearly established at the time of the deprivation.  The Court agrees.

The Supreme Court has held that 42 U.S.C. § 1983 neither confers nor establishes an independent federal right, but rather provides the citizen a vehicle to vindicate other federally established rights.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).  The viability of all Section 1983 claims are therefore contingent upon allegations and proof of "two essential elements: (1) that the Defendants acted under color of state law; and (2) that the Defendants caused [the plaintiffs] to be deprived of a right secured by the Constitution and laws of the United States."  *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).  In this vein, violations of state law alone are insufficient to sustain a Section 1983 claim.  *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981).  Under *Ybarra*, it is clear that Plaintiffs' reference to Sections 3 and 7 of the Washington Constitution are not relevant to the Section 1983 claims alleged in this matter.

Governmental entities and agents such as Clallam County and Officers Yarnes and Kellas are entitled to qualified immunity from Section 1983 suits unless Plaintiffs can demonstrate both: (1) a violation of a constitutional right, and (2) that the right was "clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If Plaintiffs fail the initial prong–that the conduct as alleged violates the United States Constitution–then the inquiry ends and the defendant governmental agents and entities are entitled to judgment as a matter of law. *Id.* But even if the conduct does in fact violate Plaintiffs' constitutional rights, a government official is still immune from suit so long as the conduct was not "clearly established" to be unlawful at the time of its undertaking. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Plaintiffs assert "the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution" as bases for recovery under Section 1983. Dkt. 4, at 11 ¶ 29. More specifically, Plaintiffs allege unreasonable search and seizure, violations of both the procedural and substantive components of the due process clause, and a taking without just compensation. Each argument lacks merit.

### 1. Clallam County's two warrantless searches of the Bakay residence were reasonable because valid consent from an authorized party was obtained.

The Fourth Amendment protects United States citizens from unreasonable searches and seizures, which generally include warrantless searches of the home. *Kyllo v. United States*, 533 U.S. 27, 31 (2001). However, the Fourth Amendment "prohibition does not apply to situations in which voluntary consent has been obtained, either from the individual whose property is searched ... or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *see also United States v. Matlock*, 415 U.S. 164, 171 (1974). Matlock and *Rodriguez* are dispositive. *Matlock* held that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *Matlock*, 415 U.S. at 170. Notably for purposes germane here, "common authority" does not implicate ownership; rather the test is whether the person granting consent has "joint access or control for most purposes." *Id.* at 171

n.7; *see also United States v. Morning*, 64 F.3d 531, 536 (9th Cir. 1995) (adopting *Matlock*

definition of "common authority"). In such cases, the property owner's reasonable expectation

of privacy diminishes due to an assumed risk "that one of their number might permit the

common area to be searched." *Matlock*, 415 U.S. at 171 n.7; *see also United States v. Miller*,

688 F.2d 652, 658-59 (9th Cir. 1982). Equally dispositive is *Rodriguez*, which expanded

*Matlock* to hold that a warrantless search still comports with Fourth Amendment guarantees if

the officer reasonably believes the person granting consent possesses common authority over the

property, even if the officer's belief is factually incorrect. *Rodriguez*, 497 U.S. at 184-86.

Two warrantless searches are at issue here. First, Officer Yarnes visually examined the

interior of Plaintiffs' residence through several windows, from the outside of the building, upon

the request of Tina Rocheleau who was concerned with the welfare of the cats on the premises.

Second, Officer Yarnes visually inspected the property again after obtaining consent from the

Bakays' primary caretaker, Andrea Gilles. Applied to these facts, *Rodriguez* and *Matlock*

require the Court to uphold these two warrantless searches so long as Officer Yarnes

*reasonably believed* that the two persons granting consent—Tina Rocheleau and Andrea

Gilles—possessed common authority over the premises.

With regard to the first search, Tina Rocheleau was already at the Bakay's residence

when Officer Yarnes arrived to follow up on a recent barking complaint. Rocheleau was there

to help her daughter, Danielle Orloff, care for the cats that day. Orloff was filling in for Andrea

Gilles, the primary care taker for the Bakay's animals and property when the Bakays were out of

town. Upon Officer Yarnes' arrival, Rocheleau openly solicited her to inspect the property from

the exterior of the buildings, stating that she was worried about the cats' welfare. Officer

Yarnes did not enter the buildings, but simply responded to Rocheleau's request by briefly

walking around the buildings and looking at the cats through the windows. Under these

circumstances, it was reasonable for Officer Yarnes' to believe that Rocheleau possessed joint

access and control of the property, especially given that Rocheleau was already on the premises

and that she asked Officer Yarnes to look at the cats.  Plaintiffs have offered no evidence to suggest that this search was unreasonable.  Consequently, the warrantless search on December 1, 2001 was constitutional.

With regard to the second search, the record shows that Officer Yarnes obtained valid consent from Andrea Gilles, who possessed joint access or control over the property as the care giver while the Bakays were absent (Leitch Decl., Ex. 1 at 24:9-21).  Plaintiffs argue that Gilles's role as care giver did not authorize her to consent to a search of the premises, and that Gilles's position was similar to that of a janitor who normally does not possess such authority. The Court disagrees.  The record shows that Gilles was entrusted with the care and welfare of the entire premises while the Bakays were absent, and possessed joint access to the property. Gilles spent hours each day caring for the 80 plus cats on the premises, and even had authority to remove the cats at her discretion to take them to the veterinarian for care.  Under these circumstances, Gilles clearly had authority to consent to a visual inspection of the property from the outside, given her concerns for the welfare of the cats, and her joint access and control over the property.  Further, there is no evidence that Officer Yarnes exceeded the scope of Gilles's consent, as Officer Yarnes did not enter the building (Leitch Decl., Ex. 1 at 16:14-22). Consequently, Gilles's consent rendered the search of the property from the exterior reasonable. Even in the absence of such authority, however, the record clearly shows that it was reasonable for Officer Yarnes to believe that Gilles possessed the authority to consent to a search, given Gilles' role as the primary care giver, and her joint access and control over the property.

Accordingly, Plaintiffs' Section 1983 claim with respect to these two warrantless searches fails as a matter of law.

**2. The warrant used to seize Plaintiffs' cats was valid because any errors in the affidavit of probable cause were inadvertent and immaterial because probable cause existed independently.**

Searches of a person's home conducted pursuant to and within the scope of a valid

search warrant are unquestionably reasonable and therefore constitutional. *Maryland v.*

*Garrison*, 480 U.S. 79, 86 (1987). Plaintiffs do not dispute that when Clallam County seized

their cats on December 10, 2001, the officers operated under the authority of warrants issued by

a neutral and detached judicial officer (Yarnes Decl. ¶ 7 & Ex. 6; Dkt. 98, Ex. 1). As such,

Plaintiffs suffered no constitutional deprivation unless they can show the warrant was unlawfully

issued or Clallam County exceeded the scope of the warrant during the search. Plaintiffs have

failed by a wide margin to make such a showing. Plaintiffs allege the search warrants were

illegally obtained, claiming Officer Yarnes lied in her affidavit of probable cause (Dkt. 46 at 5 ¶

10). However, the Supreme Court has made abundantly clear that "[t]here is, of course, a

presumption of validity with respect to the affidavit supporting the search warrant." *Franks v.*

*Delaware*, 438 U.S. 154, 171 (1978). Plaintiffs essentially allege a *Franks* violation, which

occurs only if

> [T]here [are] allegations of deliberate falsehood or of reckless disregard for the
> truth, and those allegations must be accompanied by an offer of proof. They
> should point out specifically the portion of the warrant affidavit that is claimed to
> be false; and they should be accompanied by a statement of supporting reasons.

*Id.* Most fundamentally to the facts here, "[a]llegations of negligence or innocent mistake are

insufficient." *Id.*

The Ninth Circuit has explained, in the context of Section 1983 claims, that a plaintiff,

seeking to overcome a qualified immunity defense to a *Franks* claim, must make two essential

showings: (1) "a substantial showing of a deliberate falsehood or reckless disregard," and (2)

"that, without the dishonestly included or omitted information, the magistrate would not have

issued the warrant." *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995). "Put another way, the

plaintiff must establish that the remaining information in the affidavit is insufficient to establish

probable cause." *Id.* The Ninth Circuit recently reaffirmed "probable cause exists when there is

a fair probability or substantial chance of criminal activity." *United States v. Brooks*, 367 F.3d

1128, 1134 (9th Cir. 2004) (citations and internal quotation marks omitted). Juxtaposed with

1    these standards, the facts in this case readily demonstrate that Plaintiffs' Fourth Amendment

2    claim fails as a matter of law.  Plaintiffs assert that Officer Yarnes made three "false" statements

3    to support her affidavit in support of obtaining the search warrant, namely:

> (1) that during her meeting with Danielle Rocheleau on December 1, 2001, Ms.
> Rocheleau asked YARNES to look at the cats, walk around the property, and
> look into the windows to observe the cats; (2) that Rocheleau offered details on
> how unclean the property was and that some cats were very sick and some had
> died; and (3) that the BAKAYS' veterinarian, Linda Allen, D.V.M., said it "would
> be more humane to euthanize the cats than let them continue to live in their
> existing conditions."

8    Dkt. 46, at 5 ¶ 10.  One method of committing animal cruelty in the second degree is

9    failing to "provide the animal with necessary food, water, shelter, rest, sanitation, ventilation,

10   space, or medical attention and the animal suffers unnecessary or unjustifiable physical pain as a

11   result of the failure."  RCW 16.52.207(2)(a).  Even assuming the three assertions referenced by

12   plaintiffs were false, the remaining statements in Officer Yarnes' affidavit undeniably

13   demonstrate "a fair probability or substantial chance" that Annette Bakay had committed second

14   degree animal cruelty as defined in RCW 16.52.207(2)(a). *Brooks*, 367 F.3d at 1134.

15        Officer Yarnes' affidavit detailed the lack of ventilation witnessed during the December 1

16   consensual search (Yarnes Decl., Ex. 5 at 5:23-7:7), which alone is an element of RCW

17   16.52.207(2)(a). The affidavit further detailed the numerous problems reported by Linda Allen,

18   the treating veterinarian, such as feline distemper, contamination, and insufficient nourishment

19   (Yarnes Decl., Ex. 5 at 7:8-9:24), all of which are referenced in the animal cruelty elements. The

20   affidavit further detailed a cat discovered during the December 2 consensual search which had

21   "mucous coming out of its nose and could not breathe out of its nose." *Id.*, Ex. 5 at 10:16-17.

22   The affidavit further described one part of the Bakay property that was "very unsanitary with

23   clumps of hair and feces" (*Id.*) and also a personal description of cats that were "all in varying

24   degrees of sickness, sneezing, and matted," (*Id.*, Ex. 5 at 11:2-3). The affidavit further described

25   Officer Yarnes' December 3 visit to Pacific Northwest Veterinary Hospital, at which time Linda

26   Allen showed Officer Yarnes a cat having "green mucous coming out of its nose and [unable to]

breathe out of its nose." *Id.*, Ex. 5 at 15:7-8. The affidavit further detailed that Danielle Orloff

had provided a written statement that she had known Annette Bakay for approximately one and

a half years and that she had participated in the treatment of countless cats and dogs. *Id.*, Ex. 5

at 16:6-8.  The affidavit further detailed Danielle Orloff's statement that "[m]any if not most of

the cats belonging to Bakay that had been brought to them were already so ill from distemper or

emaciation, that regardless of the extensive care provided, they died." *Id.*, Ex. 5 at 16:10-13; *see*

*also* Dkt. 100, Ex. 1.  Plaintiffs do not contest the veracity of these statements.

The Fourth Amendment simply requires all warrants to be issued "upon probable cause,

supported by oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized."  Because probable cause existed separate and independent from

any claimed defect in the affidavit, Plaintiffs' Section 1983 claim alleging violations of the

Fourth Amendment fails as a matter of law. *Hervey*, 65 F.3d at 789.  Clallam County searched

the Bakays' property under the authority of a valid warrant issued by a neutral and detached

judicial officer.  More fundamentally, Plaintiffs have no evidence of any kind challenging Judge

Williams's finding of probable cause.  The determination and warrants were clearly valid.  All

evidence seized was pursuant to this warrant, and Plaintiffs have not alleged that Clallam

County's seizure went outside the scope of the warrant.  The absence of any evidence to the

contrary negates Plaintiffs' reliance on the Fourth Amendment as a basis for a Section 1983

cause of action.

### 3. Plaintiffs' due process claims fail because the substantive due process clause does not apply and adequate post-deprivation remedies existed.

Plaintiffs further base their Section 1983 causes of action against Clallam County on a

violation of their due process rights, both substantive and procedural.  Both arguments lack any

legal merit.  Procedural due process generally requires the government to afford some notice

and opportunity to be heard before depriving a person of any liberty or property.  *Dusenberry v.*

*United States*, 534 U.S. 161, 167 (2002). Yet law enforcement that seizes property pursuant to

a judicial warrant need only provide the owner with notice that the person's property was taken.

1   *City of W. Covina v. Perkins*, 525 U.S. 234, 240-41 (1999). *Perkins* reversed a Ninth Circuit

2   holding that required law enforcement officers to inform a property owner of available state

3   remedies for reacquiring property seized by warrant. *Id.* at 239, 244. The Court held:

4           Once the property owner is informed that his property has been seized, he can turn to
            these public sources to learn about the remedial procedures available to him. The City

5           need not take other steps to inform him of his options.

6   *Id.* at 241.  Here, Plaintiffs acknowledge in their complaint that they were present when Clallam

7   County executed the search warrant to seize the 68 suffering felines.  Dkt 46 at 5-6. Plaintiffs

8   further acknowledge that they received statutory notice under RCW 16.52.085 informing them

9   of their rights under the animal cruelty statute.  *Id.* at 6; *see also* Dkt. 50 at 1, ¶ 3 & Ex. A.

10  Clallam County's notice to Plaintiffs went beyond the minimal requirements articulated by

11  *Perkins.*

12          Plaintiffs equally cannot rely on substantive due process to advance their Section 1983

13  claim. The Supreme Court has unequivocally held that a Section 1983 claim cannot be based on

14  generalized notions of substantive due process when a more specific federal constitutional right

15  is applicable. *Graham v. Connor*, 490 U.S. 386, 395 (1986). In addition, substantive due

16  process Section 1983 claims must allege and prove "the most egregious official conduct" that

17  effectively imposes arbitrary governmental deprivation. *City of Sacramento v. Lewis*, 523 U.S.

18  833, 846 (1998). Stated another way, the governmental action must "shock the conscience." *Id.*

19  There is no such claim here, as Clallam County seized—under the authority of a valid judicial

20  warrant—numerous felines living in abhorrent conditions and suffering from painful diseases.

21  Yarnes Decl. ¶ 7 & Exs. 6-10; Dkt. 98, Ex. 1; Dkt. 100 ¶ 2.  Plaintiffs have not provided a

22  single case where government seizure of animals pursuant to a warrant violated substantive due

23  process, much less demonstrated that such law was "clearly established" in 2001 when the

24  search occurred.  *Saucier*, 533 U.S. at 200.  Accordingly, the due process claims are without

25  any legal or factual merit.

26          **4. Plaintiffs' takings argument fails because such protections do not apply to
            property seized as evidence pursuant to a warrant.**

1   The Takings Clause of the Fifth Amendment, made applicable to the states through the

2   Fourteenth Amendment, states "nor shall private property be taken for public use, without just

3   compensation."  It is firmly established that "[t]he government may not be required to

4   compensate an owner for property which it has already lawfully acquired under the exercise of

5   governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S.

6   442, 452 (1996).  Plaintiffs here seek compensation resulting from Clallam County's valid

7   seizure of numerous cats, all suffering under intolerable conditions, in connection with the

8   prosecution of Annette Bakay for the violation of Animal Cruelty laws.  State law permits law

9   enforcement officers to seize any animal where probable cause exists to believe its owner has

10   violated animal cruelty statues. RCW 16.52.085(1). Clallam County seized all of the animals in

11   question pursuant to a valid judicial warrant, which did not violate Plaintiffs' Fifth Amendment

12   rights under the Takings Clause as a matter of law.

13   Further, under RCW 16.52.085(4), euthanasia is allowed at any time for animals seized

14   by the government that are deemed to be "severely injured, diseased, or suffering."  Under

15   Clallam County Code § 17.06.050, animals may be euthanized "as may be determined by the

16   shelter officer or licensed veterinarian to be suffering from serious injury or disease."  A review

17   of the evidence in this matter indicates that several serious diseases have been documented in

18   connection with the Bakay's animals, including feline distemper (panleukopenia), which is highly

19   contagious and devastating to cats.  The evidence also indicates that the presence of this and

20   other diseases was, in part, the rationale for Clallam County's decision regarding which cats

21   would be removed, and the Humane Society's rationale for later destroying some of the cats.

22   Clallam County seized the cats under valid state laws, and the cats were destroyed pursuant to

23   valid state laws.  The seizure and destruction of the cats in this matter did not violate Plaintiffs'

24   Fifth Amendment rights under the Takings Clause as a matter of law.

25   There is no genuine issue of fact for trial where the record, taken as a whole, could not

26   lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v.*

ORDER
Page - 14

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). As each and every one of Plaintiffs' alleged deprivations of federal rights do not rise to the level of federal constitutional violations, their Section 1983 causes of action fail as a matter of law and must be dismissed accordingly.

**B.    DEFENDANTS' MOTION FOR ATTORNEY'S FEES PURSUANT TO 42 U.S.C. § 1988**

Defendants' Motion for Summary Judgment includes a request for costs and attorney's fees against Plaintiffs under 42 U.S.C. § 1988 for filing and pursuing claims that are frivolous or lack merit. On December 22, 2005, Defendants filed a separate motion for sanctions under Fed. R. Civ. P. 11(b) noted for January 6, 2006. Dkt. 197. Therefore, the Court declines to rule on Defendants' present motion for costs and attorney's fees at this time, and will address this subject when ruling on Defendants' motion noted for January 6, 2006.

<u>ORDER</u>

Therefore, it is hereby

**ORDERED** that Defendants Yarnes, Kellas, Clallam County Sheriff's Office, and Clallam County Animal Control's Motion for Summary Judgment Dismissal of Federal Claims and Request for Fees Pursuant to 42 U.S.C. § 1988 (Dkt. 116) is **GRANTED**, in part, and **DENIED**, in part, as follows:

(1) All federal claims filed by Plaintiffs under 42 U.S.C. § 1983 against Defendants Yarnes, Kellas, Clallam County Sheriff's Office, and Clallam County Animal Control are dismissed with prejudice.

(2) Defendants' motion for costs and attorney's fees under 42 U.S.C. § 1988 is continued to January 6, 2006.

1      The Clerk of the Court is instructed to send uncertified copies of this Order to all

2   counsel of record and to any party appearing *pro se* at said party's last known address.

3      DATED this 29th day of December, 2005.

4

5                                          Robert J. Bryan
                                           United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 16