1

2

3

4

5

6            UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
7                   AT TACOMA

8   ANNETTE BAKAY and RICHARD
    BAKAY, wife and husband,
9
                   Plaintiffs,              Case No.  C04-5803RJB
10
        v.
11
    LAURIE A. YARNES, in her individual and       ORDER DENYING DEFENDANTS
12  official capacity as CLALLAM COUNTY           YARNES AND KELLAS' MOTION
    ANIMAL CONTROL OFFICER; LAURIE               FOR SUMMARY JUDGMENT
13  A. YARNES and TODD A. YARNES, a              REGARDING DEFENDANTS'
    marital community; TRACEY KELLAS, in          MALICIOUS PROSECUTION
14  her individual and official capacity as        COUNTERCLAIMS
    CLALLAM COUNTY ANIMAL
15  CONTROL OFFICER, and RANDOLPH J.
    KELLAS, husband and wife, a marital
16  community; CLALLAM COUNTY ex rel.
    CLALLAM COUNTY SHERIFF'S OFFICE
17  and CLALLAM COUNTY ANIMAL
    CONTROL, a Washington municipal
18  corporation; CHARLES B. SCHRAMM, in
    his individual and official capacity as
19  PRESIDENT OF HUMANE SOCIETY OF
    CLALLAM COUNTY (UBI 601-141-356),
20  a Washington nonprofit corporation;
    CHARLES B. SCHRAMM and JANE DOE
21  SCHRAMM, a marital community;
    HUMANE SOCIETY OF CLALLAM
22  COUNTY (UBI 601-141-356), a
    Washington nonprofit corporation; and
23  DOES 1-10,

24                 Defendants.

25

26

1    This matter comes before the Court on Defendants Yarnes and Kellas' Motion for

2    Summary Judgment regarding their counterclaims for malicious prosecution (Dkt. 118).  The

3    Court has considered the pleadings filed in support of and in opposition to the motions and the

4    file herein.

5    <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

6    The parties' pleadings indicate that this dispute arose after Defendant Clallam County

7    Animal Control seized approximately 68 cats from the Lost Mountain Cattery located on

8    Plaintiffs' property in Sequim, Washington.  On December 9, 2001, Defendant obtained a search

9    warrant that authorized the seizure of all of Plaintiffs' cats, based on testimony and belief that

10   the cats were neglected and/or abused.  The next day, Defendant seized 68 cats that allegedly

11   appeared neglected and unhealthy, and later destroyed 40 of them without Plaintiffs' permission.

12   The following is a brief summary of the alleged facts leading up to, and following, the seizure of

13   Plaintiffs' cats.

14   According to Plaintiffs' Complaint, in late November 2001, Clallam County received a

15   barking dog complaint from Plaintiffs' neighbor, prompting Animal Control Officer Laurie

16   Yarnes to visit Plaintiffs' property.  Dkt. 46, at 4.  Plaintiffs were out of town.  *Id.*  On a return

17   visit, Defendant Yarnes talked with a substitute caretaker and the substitute caretaker's mother,

18   the latter of whom "expressed concern for some of the cats housed inside the property."  *Id.*

19   Defendant Yarnes contends that the substitute caretaker, Danielle Orloff, and her

20   mother, Tina Rocheleau, were very concerned about the welfare of the cats.  Dkt. 116, at 2.

21   Defendant Yarnes states that Orloff and Rocheleau described horrific conditions in which over

22   70 cats were forced to live, which included cat vomit and feces spread throughout Plaintiffs'

23   residence, as well as the overwhelming odors of urine and feces.  *Id.* at 3.  Defendant Yarnes

24   contends that Orloff and Rocheleau also stated that many of these cats appeared ill and

25   neglected, with matted coats, runny eyes, and similar health problems.  *Id.*  During this meeting,

26   Rocheleau escorted Defendant Yarnes around the exterior of Plaintiffs' residence, during which

1   time she saw, through the windows, many cats in enclosed spaces with insufficient ventilation.

2   *Id.*

3          Shortly thereafter, Plaintiffs' primary caretaker, Andrea Gilles, returned an earlier phone

4   call from Defendant Yarnes, and agreed to meet Defendant Yarnes at Plaintiffs' residence. *Id.* at

5   4. Gilles granted Defendant Yarnes permission to inspect the property from the outside. *Id.*

6   Defendant Yarnes contends that she witnessed cats living in urine puddles, cats with mucus

7   coming out of their noses, and cats in varying degrees of sickness. *Id.* Defendant Yarnes also

8   contends that Gilles counted 64 cats living on the premises at that time. *Id.*

9          After obtaining a search warrant, which Plaintiffs contend was improperly issued,

10  members of the Clallam County Sheriff's Office and Clallam County Animal Control entered

11  Plaintiffs' property on December 10, 2001 and seized approximately 68 cats. Dkt. 46, at 5.

12  Plaintiffs were home at the time of the seizure. *Id.* Plaintiff Richard Bakay contends that he

13  asked Defendant Yarnes and another animal control officer, Defendant Tracey Kellas, if they

14  intended to euthanize certain cats. Dkt. 50, at 2. Bakay states that they assured him no harm

15  would come to the cats as long as he complied with the notice they gave him, which indicated

16  that he had 15 days to petition in court for the cats' return. *Id.* Yarnes and Kellas deny giving

17  Richard Bakay any such assurances. Dkts. 57 and 58.

18         Defendant Tev M. Barros, D.V.M., a licensed veterinarian, was present, at the request of

19  Clallam County Animal Control, when the cats were seized. Plaintiffs allege that Barros

20  examined the cats and ordered the euthanasia of at least 42 of them. Dkt. 46, at 4. Plaintiffs

21  also allege that even though Defendant Barros was videotaped examining the cats and making

22  the decision to euthanize several of them, Yarnes and Kellas were hidden off camera making

23  signals to Dr. Barros as to which animals should be killed. *Id.* at 7. That evening and the next

24  morning, the Clallam County Humane Society euthanized many of the cats. *Id.* at 6. Later,

25  Kellas served a search warrant on Plaintiffs' veterinarian, Linda Allen, and seized two additional

26  cats belonging to the Bakays, one of which was later euthanized. *Id.*

ORDER
Page - 3

In late December 2001, the Clallam County Prosecuting Attorney's Office filed 84 counts of animal cruelty charges against Plaintiff Annette Bakay. *Id.* at 6. Clallam County later lost the bodies of the euthanized cats. *Id.* All charges against Annette Bakay were dropped pursuant to a stipulated motion for dismissal signed August 27, 2002. *Id.*

The remaining 27 cats were returned to Plaintiffs, and Defendants have not had any of Plaintiffs' cats in their possession since 2002. *Id.* Plaintiffs later spayed and neutered more than one half the remaining cats for various reasons. *Id.* Plaintiffs contend that they lost their Cat Fanciers' Association (CFA) license because of the publicity surrounding the seizure. *Id.*

As a result of the seizure and destruction of the cats, Plaintiffs have alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as a basis for claims under 42 U.S.C. § 1983, and several state law claims. Dkt. 46. Plaintiffs filed their Complaint on November 29, 2004. Dkt. 1.

## MOTION FOR SUMMARY JUDGMENT

On November 1, 2005, Defendants Yarnes and Kellas filed this Motion for Summary Judgment regarding their counterclaims for malicious prosecution. Defendants Yarnes and Kellas contend that enough evidence exists for the Court to rule, as a matter of law, that Plaintiffs have pursued their claims against them despite actual knowledge that these claims are frivolous and without merit.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could

1   not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v.*

2   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

3   significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P.

4   56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

5   supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

6   of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc.*

7   *v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

8           The determination of the existence of a material fact is often a close question.  The court

9   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

10  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec.*

11  *Serv., Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

12  of the nonmoving party only when the facts specifically attested by that party contradict facts

13  specifically attested by the moving party.  The nonmoving party may not merely state that it will

14  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

15  to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

16  Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

17  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

                                   DISCUSSION

18          At issue is Washington's malicious prosecution counterclaim statute, which provides in

19  pertinent part:

20      (1) In any action for damages, whether based on tort or contract or otherwise, a
        claim or counterclaim for damages may be litigated in the principal action for
21      malicious prosecution on the ground that the action was instituted with
        knowledge that the same was false, and unfounded, malicious and without
22      probable cause in the filing of such action, or that the same was filed as a part of a
        conspiracy to misuse judicial process by filing an action known to be false and
23      unfounded.

24

25

26

1

2

   (2) In any action, claim, or counterclaim brought by a ... law enforcement officer
   for malicious prosecution arising out of the performance or purported
   performance of the public duty of such officer, an arrest or seizure of property
   need not be an element of the claim, nor do special damages need to be proved. A
   ... law enforcement officer prevailing in such an action may be allowed an amount
   up to one thousand dollars as liquidated damages, together with a reasonable
   attorneys' fee, and other costs of suit. ...

3

4

5   RCW 4.24.350(1)-(2).  As previously determined by the Court, Officers Yarnes and Kellas

6   qualify as "law enforcement officers" for purposes of the statute.  Dkt. 40 at 6.

7        The common law elements of a malicious prosecution claim are well-established:

8

9

10

   (1) that the prosecution claimed to have been malicious was instituted or
   continued by the defendant; (2) that there was want of probable cause for the
   institution or continuation of the prosecution; (3) that the proceedings were
   instituted or continued through malice; (4) that the proceedings terminated on the
   merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff
   suffered injury or damage as a result of the prosecution.

11   *Clark v. Baines*, 150 Wn.2d 905, 911 (2004) (citations omitted).

12        RCW 4.24.350 absolves counterclaimants from proving the fifth element—specific injury

13   or damage—due to the Washington legislature's intent to "provide a remedy to those public

14   officers and to the public" who are forced to confront "unfounded lawsuits [and] claims. . .

15   having the purpose and effect of deterring those officers in the exercise of their discretion and

16   inhibiting the performance of their public duties." 1984 WASH. LAWS., ch. 133 § 1.

17        Defendants Yarnes and Kellas request that the Court rule, as a matter of law, that

18   Plaintiffs filed and continued to pursue claims against them *knowing* that these claims were false,

19   unfounded, malicious, and without probable cause.  The record, however, is not clear and

20   unequivocal with regard to these matters, and such issues of fact–especially those involving

21   Plaintiffs' knowledge–should be determined by a jury.

22        Moreover, the Court has dismissed all federal claims brought under 42 U.S.C. § 1983

23   against Defendants Yarnes and Kellas, and all state law tort claims brought against Defendants

24   Yarnes and Kellas.  The Court has not dismissed any claims against Yarnes and Kellas alleging

25   violations of Plaintiffs' rights under the Washington Constitution.  These issues have not been

26   addressed by motion.

ORDER
Page - 6

1

<u>ORDER</u>

2

Therefore, it is hereby

3

**ORDERED** that Defendants Laurie Yarnes and Tracey Kellas' Motion for Summary

4

Judgment Regarding Malicious Prosecution Counterclaims (Dkt. 118) is **DENIED** without

5

prejudice.

6

The Clerk of the Court is instructed to send uncertified copies of this Order to all

7

counsel of record and to any party appearing *pro se* at said party's last known address.

8

Dated this 30th day of December, 2005.

9

10

11

12

13

Robert J. Bryan

14

U.S. District Judge

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 7