UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANNETTE BAKAY and RICHARD BAKAY, wife and husband,

    Plaintiffs,

v.

LAURIE A. YARNES, in her individual and official capacity as CLALLAM COUNTY ANIMAL CONTROL OFFICER; LAURIE A. YARNES and TODD A. YARNES, a marital community; TRACEY KELLAS, in her individual and official capacity as CLALLAM COUNTY ANIMAL CONTROL OFFICER, and RANDOLPH J. KELLAS, husband and wife, a marital community; CLALLAM COUNTY ex rel. CLALLAM COUNTY SHERIFF'S OFFICE and CLALLAM COUNTY ANIMAL CONTROL, a Washington municipal corporation; CHARLES B. SCHRAMM, in his individual and official capacity as PRESIDENT OF HUMANE SOCIETY OF CLALLAM COUNTY (UBI 601-141-356), a Washington nonprofit corporation; CHARLES B. SCHRAMM and JANE DOE SCHRAMM, a marital community; HUMANE SOCIETY OF CLALLAM COUNTY (UBI 601-141-356), a Washington nonprofit corporation; and DOES 1-10,

    Defendants.

Case No. C04-5803RJB

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS SCHRAMM AND HUMANE SOCIETY OF CLALLAM COUNTY'S MOTION FOR SUMMARY JUDGMENT

ORDER
Page - 1

This matter comes before the Court on Defendants Schramm and the Humane Society of Clallam County's Motion for Summary Judgment and Sanctions (Dkt. 113). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

PROCEDURAL AND FACTUAL BACKGROUND

The parties' pleadings indicate that this dispute arose after Defendant Clallam County Animal Control seized approximately 68 cats from the Lost Mountain Cattery located on Plaintiffs' property in Sequim, Washington. On December 9, 2001, Defendant obtained a search warrant that authorized the seizure of all of Plaintiffs' cats, based on testimony and belief that the cats were neglected and/or abused. The next day, Defendant seized 68 cats that allegedly appeared neglected and unhealthy, and later destroyed 40 of them without Plaintiffs' permission. The following is a brief summary of the alleged facts leading up to, and following, the seizure of Plaintiffs' cats.

According to Plaintiffs' Complaint, in late November 2001, Clallam County received a barking dog complaint from Plaintiffs' neighbor, prompting Animal Control Officer Laurie Yarnes to visit Plaintiffs' property. Dkt. 46, at 4. Plaintiffs were out of town. *Id.* On a return visit, Defendant Yarnes talked with a substitute caretaker and the substitute caretaker's mother, the latter of whom "expressed concern for some of the cats housed inside the property." *Id*.

Defendant Yarnes contends that the substitute caretaker, Danielle Orloff, and her mother, Tina Rocheleau, were very concerned about the welfare of the cats. Dkt. 116, at 2. Defendant Yarnes states that Orloff and Rocheleau described horrific conditions in which over 70 cats were forced to live, which included cat vomit and feces spread throughout Plaintiffs' residence, as well as the overwhelming odors of urine and feces. *Id.* at 3. Defendant Yarnes contends that Orloff and Rocheleau also stated that many of these cats appeared ill and neglected, with matted coats, runny eyes, and similar health problems. *Id.* During this meeting, Rocheleau escorted Defendant Yarnes around the exterior of Plaintiffs' residence, during which

ORDER
Page - 2

time she saw, through the windows, many cats in enclosed spaces with insufficient ventilation. *Id.*

Shortly thereafter, Plaintiffs' primary caretaker, Andrea Gilles, returned an earlier phone call from Defendant Yarnes, and agreed to meet Defendant Yarnes at Plaintiffs' residence. *Id.* at 4. Gilles granted Defendant Yarnes permission to inspect the property from the outside. *Id.* Defendant Yarnes contends that she witnessed cats living in urine puddles, cats with mucus coming out of their noses, and cats in varying degrees of sickness. *Id.* Defendant Yarnes also contends that Gilles counted 64 cats living on the premises at that time. *Id.*

After obtaining a search warrant, which Plaintiffs contend was improperly issued, members of the Clallam County Sheriff's Office and Clallam County Animal Control entered Plaintiffs' property on December 10, 2001 and seized approximately 68 cats. Dkt. 46, at 5. Plaintiffs were home at the time of the seizure. *Id.* Plaintiff Richard Bakay contends that he asked Defendant Yarnes and another animal control officer, Defendant Tracey Kellas, if they intended to euthanize certain cats. Dkt. 50, at 2. Bakay states that they assured him no harm would come to the cats as long as he complied with the notice they gave him, which indicated that he had 15 days to petition in court for the cats' return. *Id.* Yarnes and Kellas deny giving Richard Bakay any such assurances. Dkts. 57 and 58.

Defendant Tev M. Barros, D.V.M., a licensed veterinarian, was present, at the request of Clallam County Animal Control, when the cats were seized. Plaintiffs allege that Barros examined the cats and ordered the euthanasia of at least 42 of them. Dkt. 46, at 4. Plaintiffs also allege that even though Defendant Barros was videotaped examining the cats and making the decision to euthanize several of them, Yarnes and Kellas were hidden off camera making signals to Dr. Barros as to which animals should be killed. *Id.* at 7. That evening and the next morning, the Clallam County Humane Society euthanized many of the cats. *Id*. at 6. Later, Kellas served a search warrant on Plaintiffs' veterinarian, Linda Allen, and seized two additional cats belonging to the Bakays, one of which was later euthanized. *Id.*

ORDER
Page - 3

In late December 2001, the Clallam County Prosecuting Attorney's Office filed 84 counts of animal cruelty charges against Plaintiff Annette Bakay. *Id.* at 6. Clallam County later lost the bodies of the euthanized cats. *Id.* All charges against Annette Bakay were dropped pursuant to a stipulated motion for dismissal signed August 27, 2002. *Id.*

The remaining 27 cats were returned to Plaintiffs, and Defendants have not had any of Plaintiffs' cats in their possession since 2002. *Id.* Plaintiffs later spayed and neutered more than one half the remaining cats for various reasons. *Id.* Plaintiffs contend that they lost their Cat Fanciers' Association (CFA) license because of the publicity surrounding the seizure. *Id.*

As a result of the seizure and destruction of the cats, Plaintiffs have alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as a basis for claims under 42 U.S.C. § 1983, and several state law claims. Dkt. 46. Plaintiffs filed their Complaint on November 29, 2004. Dkt. 1.

## MOTION FOR SUMMARY JUDGMENT

On November 1, 2005, Defendants Schramm and the Humane Society of Clallam County filed this Motion for Summary Judgment seeking dismissal of all claims filed against them in this matter. In their Complaint and subsequent pleadings, Plaintiffs allege many claims against Defendants Schramm and the Humane Society of Clallam County, including: (1) simple and gross negligence, (2) violations of Plaintiffs' civil rights under the United States Constitution and the Washington Constitution, (3) respondeat superior, (4) conversion and trespass to chattels, (5) breach of bailment contract, (6) outrage, (7) statutory waste, (8) breach of fiduciary duty, and (9) tortious interference with business expectancy.

These Defendants became involved in this dispute when Clallam County Animal Control delivered the Bakay's cats to the Clallam County Humane Society. After an examination by Judy Nikodym, the Executive Director of the Humane Society, several of the cats were euthanized on the night the cats were received. Nikodym died approximately six months after the seizure of the animals.

Defendant Charles Schramm, a licensed veterinarian, was at the time of the seizure the President of the Board of Directors of the Humane Society. He also volunteered his veterinarian services (and those of his paid staff) to the Humane Society. On the day following the seizure, Schramm euthanized one of the two cats seized from the office of Linda Allen, Plaintiffs' veterinarian. Schramm later euthanized several more of Plaintiffs' cats at the Humane Society. The remaining cats were ultimately returned to Plaintiffs.

Defendants contend that all of the cats that were euthanized were first properly examined by Judy Nikodym and/or Charles Schramm, and determined to be severely suffering and/or diseased. Defendants further contend that these cats were properly euthanized pursuant to RCW 16.52.085(4) and Clallam County Code § 17.06.050.

Under RCW 16.52.085(4), euthanasia is allowed at *any time* for animals seized by the government that are deemed to be "severely injured, diseased, or suffering." Under Clallam County Code § 17.06.050, animals may be euthanized "as may be determined by the shelter officer or licensed veterinarian to be suffering from serious injury or disease."

Defendants point out that the record clearly shows a history of disease at Plaintiffs' cattery, including instances of feline distemper (panleukopenia), which is highly contagious and devastating to cats. Defendants also point out that the record–including videotape taken the night of the seizure–shows that the majority of the cats were neglected and ill, and forced to live in unreasonable conditions. Defendants argue that the euthanasia of the cats was necessary under the circumstances, not only to end the suffering of the cats, but to prevent further spread of infectious diseases. Defendants also argue that there is no evidence that Nikodym or Schramm failed in any way to provide the appropriate standard of care under the circumstances.

Plaintiffs argue that Nikodym and Schramm's decision to euthanize the cats was improper and unnecessary, and that the cats should have been treated rather than destroyed. Plaintiffs also argue that the primary motivation behind destroying the cats was the Humane Society's lack of space to treat the animals, and/or the Humane Society's fear of spreading any

diseases the cats may have had. Plaintiffs make numerous other arguments and allegations in their pleadings, which are not repeated here for the sake of brevity.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

ORDER
Page - 6

presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

DISCUSSION

A.  NEGLIGENCE

Plaintiffs argue that Defendants Schramm and the Clallam County Humane Society were negligent in destroying the cats in question, and that they did so only because they lacked adequate facilities to house the cats. Plaintiffs further argue at length that Defendants Schramm and the Clallam County Humane Society were negligent in just about every other aspect of the process, from the manner in which they euthanized the cats to their failure to keep the cats alive–even if they were suffering–until the 15-day period expired. A careful review of these negligence claims shows that the only claim with *potential* merit centers around the diagnosis and recommendations made by Judy Nikodym and Defendant Charles Schramm. Simply stated, if Nikodym and Schramm failed to exercise reasonable care in their examinations, and ultimately made faulty decisions to euthanize the cats, they may be liable to Plaintiffs for the value of the cats. If Nikodym and Schramm were correct in their diagnosis, and the cats in question were in fact severely injured, diseased, or suffering, then the law is clear that they had the right to euthanize the cats.

Under RCW 16.52.085(4), euthanasia is allowed at *any* time for animals seized by the government that are deemed to be "severely injured, diseased, or suffering." Under Clallam County Code § 17.06.050, animals may be euthanized "as may be determined by the shelter officer or licensed veterinarian to be suffering from serious injury or disease."

In an action for negligence, the burden rests upon the plaintiff to establish "(1) the existence of the duty owed, (2) breach of that duty, (3) a resulting injury, and (4) proximate cause." *Tincani v. Inland Empire Zoological Society*, 124 Wn.2d 121, 127-28 (1994). The existence of a duty is a threshold question. If there is no duty, then a plaintiff does not have a valid claim. *Folsom v. Burger King*, 135 Wn.2d 658, 671 (1998). Whether a legal duty exists is a question of law for the court. *Pedroza v. Bryant*, 101 Wn.2d 226, 228 (1984). Plaintiffs have

the burden of establishing the existence of a duty. *Lake Washington Sch. Dist. No. 414 v. Schuck's Auto Supply, Inc.*, 26 Wn.App. 618, 621 (1980). In a negligence action, a defendant's duty may be predicated on violation of statute or common law principles of negligence. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 932 (1982).

Here, Plaintiffs have failed to show that any Washington statute extends a heightened duty to Plaintiffs in this matter. The Washington statute under which the animals were seized states that "[l]aw enforcement officers and licensed veterinarians shall be immune from civil and criminal liability for actions taken under this chapter if reasonable prudence is exercised in carrying out the provisions of this chapter." RCW 16.52.210. Assuming that Defendants owed a duty of reasonable care to Plaintiffs, either through the application of this statute or Washington common law, Plaintiffs have still failed to show any credible evidence that Defendants breached this duty. There is no credible evidence that Nikodym and Schramm were negligent in their examinations, and no credible evidence that the cats in question were not severely injured, diseased, or suffering. To the contrary, an overwhelming amount of evidence on the record–including videotape of the examinations on the night of the seizure and the environment of the cats–supports Defendants' position that many of the cats were severely suffering and should have been euthanized.

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). The Court has carefully reviewed the facts in evidence, and the testimony in this matter, in a light most favorable to Plaintiffs, and concluded that there is no evidence in the record to support Plaintiffs' claims for negligence as a matter of law.

B.   VIOLATION OF PLAINTIFFS' CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND THE WASHINGTON CONSTITUTION

Plaintiffs have alleged the violation of their civil rights in this matter, including procedural due process, substantive due process, violation of their rights under the 4th, 5th or 14th Amendment, and violations of their state constitutional rights under Article 1 of the Washington Constitution.  Article 1 § 3 of the Washington Constitution provides that: "No one shall be deprived of life, liberty, or property without due process of law."

A careful review of the record shows that Plaintiffs have failed by a wide margin to offer any credible evidence whatsoever that the cats were improperly examined, diagnosed, or euthanized, while Defendants have offered an overwhelming amount of evidence in their favor. Plaintiffs, however, raise the issue of due process, arguing that they should have received notice and an opportunity to be heard in some form before the cats were euthanized.  This issue is important and worthy of analysis.

Due process, that is, notice and opportunity to be heard, is required when a "significant property interest" is involved. *Cranwell v. Mesec*, 77 Wn. App. 90, 108 (1999).  Procedural due process prevents the government from taking a person's property or liberty without providing that party notice and an opportunity to be heard. *Bryant v. Joseph Tree, Inc.*, 119 Wn2d 210, 224 (1992).  Here, however, Plaintiffs' argument is misplaced.  The due process rights of notice and opportunity to be heard have been circumvented by RCW 16.52.085(4), the statute that allows a custodial agent to euthanize an animal at *any time* if it is deemed to be severely suffering.  It is not unusual for laws to deny a property owner notice and opportunity to be heard when exigent circumstances arise, and it serves the public interest to act immediately. This statute is no exception.  It was designed by the Washington legislature to serve a humanitarian purpose, namely, to terminate the suffering of animals at any time without delay. To hold that notice and a hearing are required before an animal that is severely suffering can be euthanized is to rewrite this law.  The relief sought by Plaintiffs is better left to the Washington legislature.

ORDER
Page - 9

The rest of Plaintiffs' claims alleging violations of their rights under the federal and state constitutions are ambiguous and lack merit. Plaintiffs raise these allegations, blaming Defendants for mishandling every step of the process, but fail to develop any of these claims into a cogent legal argument, and fail to offer any credible testimony in the record to support them. In *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996), the United States Court of Appeals for the Ninth Circuit stated, "As other courts have noted, it is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." Plaintiffs have failed to meet this burden. Consequently, Plaintiffs' federal and state constitutional claims against Defendants Schramm and the Clallam County Humane Society should be dismissed with prejudice as a matter of law.

### C. TRESPASS TO CHATTELS & CONVERSION

No cause of action for trespass to chattels or conversion exists if the defendant has legal authority to seize or take dominion over the plaintiff's property. *Martin v. Sikes*, 38 Wn.2d 274, 278 (1951). The cats in question were lawfully seized under a valid search warrant. Moreover, Defendants Schramm and the Humane Society of Clallam County both acted pursuant to RCW 16.52.085(4), which gave them authority to euthanize animals deemed to be severely suffering. A careful review of the record shows that no credible evidence exists to suggest that Defendants Schramm or the Humane Society acted negligently in carrying out their duties, or exceeded their authority in these matters. Consequently, these claims must be dismissed as a matter of law.

### D. BREACH OF BAILMENT CONTRACT

Plaintiffs contend that a bailment contract was formed when Clallam County seized their cats, and was breached when some of the cats were euthanized rather than returned. Plaintiffs' reasoning and application of the law is misplaced. "A bailment arises generally when personality is delivered to another for some particular purpose with an express or implied contract to redeliver when the purpose has been fulfilled." *Freeman v. Metro Transmission, Inc.*, 12 Wn.

App. 930, 932 (1975); *Gringrich v. Unigard Sec. Ins. Co.*, 57 Wn. App. 424, 432 (1990). In this case, Plaintiffs' cats were seized under a valid warrant issued in an animal cruelty investigation, and there was no express or implied contract to return the animals at any time. Any notice given by the officers that Plaintiffs could petition the court for the return of the cats within 15 days does not constitute a promise that the cats would be returned, just notice that Plaintiffs could seek a potential remedy through the court system. Once animals are removed by the state under RCW 16.52 *et. seq.*, return of the animals is not a guaranteed right. People who have their animals seized must petition the court to have them returned, and the court will only do so if the petitioner makes an adequate showing that the animals will not suffer under their care. Moreover, the same statute that gives Plaintiffs the right to petition the court within 15 days also gives the state the right to euthanize animals that are suffering at any time. Consequently, a bailment contract was not created when the cats were seized, and not violated when the cats were euthanized. Plaintiffs' claim fails as a matter of law.

E. OUTRAGE

A plaintiff claiming the tort of outrage as recognized in Washington must prove that the defendant's conduct was "*so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*" *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975) (emphasis in original). Moreover, a plaintiff must also prove that the outrageous conduct caused "severe emotional distress." *Id.* Further, the plaintiff must be present at the time of such conduct. *Reid v. Pierce County*, 136 Wn.2d 195, 202 (1998). Here, Plaintiffs have failed to show that the actions taken by Defendants Schramm or the Humane Society of Clallam County were outrageous in any way. Nor have Plaintiffs provided *any* credible evidence that they have suffered severe emotional distress as a result. Nor were Plaintiffs present when the cats in question were euthanized. Consequently, Plaintiffs' claim of outrage fails as a matter of law.

F. STATUTORY WASTE

ORDER
Page - 11

Plaintiffs' statutory waste claim is based on RCW 4.24.630, which provides liability for the removal of valuable property from a person's land. The statute requires that the defendant knew, or had reason to know, that he or she lacked authority to remove the property. In this case, there is no evidence whatsoever to support Plaintiffs' statutory waste claim.

G.  BREACH OF FIDUCIARY DUTY

Plaintiffs claim that a constructive trust arose when Clallam County law enforcement seized the cats and delivered them to the Humane Society of Clallam County, and therefore the euthanasia of the cats breached a fiduciary duty owed to Plaintiffs. This claim is without merit. Generally, "[u]nless an equitable base is established by evidence of intent, there must be some element of wrongdoing in order to impose a constructive trust." *Baker v. Leonard*, 120 Wn.2d 538, 548 (1993). No Washington court has recognized the existence of a constructive trust imposed on law enforcement officers after lawfully seizing evidence pursuant to a warrant. Further, as discussed above, the euthanasia was lawfully performed by the Clallam County Humane Society under RCW 16.52.085(4), and a careful review of the record has shown that no credible evidence exists to support Plaintiffs' claim of negligence or wrongdoing in this matter. Consequently, Plaintiffs' claim for breach of fiduciary duty fails as a matter of law.

H.  TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

An essential element of a claim for tortious interference with a business expectancy is that the defendant "interfered for an improper purpose or used improper means." *Havsy v. Flynn*, 88 Wn. App. 514, 518-19 (1997). Stated another way, the plaintiff must prove that the defendant had a duty of non-interference. *Kierburtz & Assoc., Inc. v. Rehn*, 68 Wn. App. 260, 267 (1992). Here, any hypothetical interference by Defendants Schramm or the Humane Society of Clallam County with Plaintiffs' business was done pursuant to RCW 16.52.085(4), which gave them the authority to euthanize animals that are deemed to be severely suffering. No credible evidence exists in the record to suggest that Defendants interfered with Plaintiffs' business for an improper purpose or used improper means. Consequently, Plaintiffs claim fails

as a matter of law.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Caltrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Though questions of fact are generally reserved for a jury, the court may decide such issues as a matter of law if a reasonable jury could come to but one conclusion. *West v. State Farm Fire & Cas. Co.* 868 F.2d 348, 351 (9th Cir. 1988). Such is the case here with the above claims. Plaintiffs have failed to show credible evidence that there is a genuine issue of material fact with regard to *any of the claims* in their Complaint and subsequent pleadings brought against Defendants Schramm and the Clallam County Humane Society. The Court has construed all facts in the record in favor of Plaintiffs for the purpose of summary judgment, and determined that there is no evidence to support these claims. Consequently, all claims against Defendants Schramm and the Humane Society of Clallam County must be dismissed as a matter of law.

I. SANCTIONS

Defendants Schramm and the Humane Society of Clallam County have requested sanctions in this matter. On December 22, 2005, Defendants Yarnes, Kellas, the Clallam County Sheriff's Office and the Clallam County Animal Control filed a separate motion for sanctions under Fed. R. Civ. P. 11(b) noted for January 6, 2006. Dkt. 197. Therefore, the Court declines to rule on Defendants' present motion for costs and attorney's fees at this time, and will address this subject for all defendants in this matter when ruling on Defendants' motion noted for January 6, 2006.

J.  STATUS OF CASE

Upon this Order being issued, the status of the case is as follows: (1) all claims against Defendants Schramm and the Humane Society of Clallam County have been dismissed with prejudice, (2) all claims against Defendant Tev Barros have been dismissed with prejudice (Dkt. 196), and (3) all claims against Defendants Yarnes, Kellas, Clallam County Sheriff's Office, and Clallam County Animal Control have been dismissed with prejudice, with the exception of any potential claims brought under the Washington Constitution (Dkts. 205 & 209).  The following matters are still pending: (1) Defendants Yarnes and Kellas' Counterclaims for Malicious Prosecution (Dkt. 22), (2) Defendants Yarnes, Kellas, Clallam County Sheriff's Office, Clallam County Animal Control, Schramm, and the Humane Society of Clallam County's Motions for Sanctions (Dkts. 197 & 113), and (3) Defendants Yarnes, Kellas, and Clallam County's Motion for Reconsideration (Dkt. 210).

ORDER

Therefore, it is hereby

**ORDERED** that Defendants Schramm and the Humane Society of Clallam County's Motion for Summary Judgment and for Sanctions (Dkt. 113) is **GRANTED**, in part, and **DENIED**, in part, as follows:

(1) All claims filed by Plaintiffs against Defendants Schramm and the Humane Society of Clallam County are dismissed with prejudice.

(2) Defendants' motion for sanctions is continued to January 6, 2006.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 3rd day of January, 2006.

Robert J. Bryan
United States District Judge

ORDER
Page - 14